**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| Malikie Innovations Ltd. and Key Patent Innovations Ltd., | § § § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Case No. 2:25-cv-00519-JRG-RSP |
| v. | § | |
| | § | |
| Core Scientific, Inc. | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

**DEFENDANT CORE SCIENTIFIC, INC.'S MOTION TO TRANSFER VENUE**
**UNDER 28 U.S.C. § 1404(a)**

## TABLE OF CONTENTS

I.    FACUAL BACKGROUND ............................................................................ 1

II.   LEGAL STANDARDS ............................................................................... 5

III.  ARGUMENT ............................................................................................... 7

A.    Plaintiffs Could Have Brought this Action in the Western District of Texas..................... 7

B.    The Western District of Texas is Clearly a More Convenient Venue .............................. 8

      1.    Each Public Factor Supports Transfer or is Neutral ............................................... 8

      2.    Each Private Factor Also Supports Transfer or is Neutral................................... 10

IV.   CONCLUSION............................................................................................ 15

# TABLE OF AUTHORITIES

## **Cases**

*Allergan Sales, LLC v. UCB, Inc.*, No. 2:15-cv-1001-JRG-RSP, 2016 WL 8201783 (E.D. Tex. Nov. 2, 2016) ................................................................. 15

*Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233 (5th Cir. 2009) ..................................................... 6

*Cerence Operating Co. v. Samsung Elec. Co., Ltd.*, No. 2:23-cv-0482-JRG-RSP, 2025 WL 755219 (E.D. Tex. Mar. 10, 2025) ........................................................... 11, 12, 14

*Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022) ......................................................... 9

*Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53 (5th Cir. 1963) ......................... 6

*In re Clarke*, 94 F.4th 502 (5th Cir. 2024) ............................................................................... 7, 9

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) ........................................................ 12, 15

*In re Google LLC*, 58 F.4th 1379 (Fed. Cir. 2023) ........................................................... passim

*In re Google LLC*, 855 F. App'x 767 (Fed. Cir. 2021) ............................................................... 9

*In re Nintendo Co., Ltd.*, 589 F.3d 1194 (Fed. Cir. 2009) .......................................................... 6

*In re Quest Diagnostics, Inc.*, 2021 WL 5230757 (Fed. Cir. Nov. 10, 2021) ........................... 11

*In re Radmax, Ltd.*, 720 F.3d 285 (5th Cir. 2013) ...................................................................... 6

*In re TikTok*, 85 F.4th 352 (5th Cir. 2023) ............................................................... 8, 10, 11, 14

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) .................................................... 11

*In re Volkswagon AG*, 371 F.3d 201 (5th Cir. 2004) ....................................................... 6, 8, 10

*Klausner Techs., Inc. v. Interactive Intel. Grp., Inc.*, 2012 WL 13012618 (E.D. Tex. Sept. 26, 2012) ................................................................................................... 15

*Kranos IP Corp. v. Riddell Inc.*, No. 2:17-cv-443-JRG, 2017 WL 3704762 (E.D. Tex. Aug. 28, 2017) ........................................................................... 6, 10, 11, 12, 13

*n re EMC Corp.*, 501 F. App'x 973 (Fed. Cir. 2013) ............................................................... 15

*Network Protection Scis., LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) ........................................................................ 10

*Olivistar, LLC v. Facebook, Inc.*, No. 2:14-CV-341-JRG, 2015 WL 13390509 (E.D. Tex. Mar. 26, 2015)............................................................................... 6

*Peteet v. Dow Chem. Co.*, 868 F.2d 1428 (5th Cir. 1989) .......................................... 15

*R2 Sol'ns LLC v. Target Corp.*, No. 4:21-CV-92, 2021 WL 2550908 (E.D. Tex. June 22, 2021)............................................................................................. 10

*Raytheon Co. v. Cray, Inc.*, 258 F.Supp.3d 781 (E.D. Tex. June 29, 2017) ................................. 8

## **Statutes**

28 U.S.C. § 1338(a) .................................................................................................. 7

28 U.S.C. § 1400(b) .................................................................................................. 7

28 U.S.C. § 1404(a) .............................................................................................. 1, 5

## **Rules**

Fed. R. Civ. P. 45 ................................................................................................... 12

Because no party has relevant ties to this District and the Western District of Texas is a clearly more convenient venue, Defendant Core Scientific, Inc. ("Core Scientific") respectfully moves to transfer this case pursuant to 28 U.S.C. § 1404(a). Core Scientific's only connection to this District is a single data center in Denton, Texas, which has no relation to the purportedly infringing activities today. Outside of this data center, Core Scientific has no employees in this District, maintains no relevant evidence in this District, and is not aware of any potential witnesses located in this District. In comparison, the Western District of Texas has proper jurisdiction and venue over this case and is home to numerous Core Scientific employees that are knowledgeable as to the subject matter of this case and will testify at trial. Further, a Core Scientific data center located in the Western District of Texas engages in the activities that Plaintiffs allege infringe the patents in this case. In contrast, Plaintiffs are foreign companies that recently acquired the patents in suit and appear to have no relevant connection to this District. Moreover, Plaintiffs have a pending case in the Western District of Texas asserting the same patents against another company with materially identical infringement allegations.

Therefore, for the reasons explained herein, Core Scientific respectfully requests that the Court grant its motion to transfer.

## I.    FACUAL BACKGROUND

On May 12, 2025, Plaintiffs Malikie Innovations Ltd. and Key Patent Innovations Ltd. ("Plaintiffs") filed this action asserting infringement of five patents. *See* Dkt. 1. On the same day, Plaintiffs filed a related action in the Western District of Texas containing near-identical allegations and asserting the same five patents. *See Malikie Innovations Ltd. et al. v. MARA Holdings, Inc. (f/k/a Marathon Digital Holdings, Inc.)*, No. 7:25-CV-222-DC-DTG, Dkt. 1 (W.D.

Tex. May 12, 2025); Ferguson Decl., ¶¶ 2-4, Ex. A.[1] Plaintiffs are both Irish entities with offices in Ireland. Dkt. 1, ¶¶ 1–2.

Plaintiffs allege that Core Scientific infringes five patents that relate to alleged "innovations in elliptic curve cryptography." *Id.*, ¶ 5. The five patents originated out of Blackberry Ltd. and its subsidiary Certicom, with Plaintiffs describing themselves as the "successor-in-interest" to Blackberry's patent portfolio. *Id.*, ¶¶ 1, 5.[2]

The five patents have a total of six named inventors: Marinus Struik, Daniel R. Brown, Scott A. Vanstone, Robert P. Gallant, Adrian Antipa, and Robert J. Lambert. *See* Dkt. 1, Exs. 1-5. From publicly-available information, it appears that all the inventors are in Canada. Ferguson Decl., ¶¶ 6-12, Exs. B-G.

Core Scientific is a Delaware corporation with its principal executive offices located in Dover, Delaware. Kezar Decl., ¶ 2;[3] *see also* Ferguson Decl., Ex. H (Core Scientific 10-Q (May 7, 2025) (cover page)). Plaintiffs allege that activities related to "bitcoin mining" infringe the patents. *See* Dkt. 1, ¶¶ 37, 116. According to the Complaint, Core Scientific's supposedly infringing activity is its "bitcoin mining operations." *Id.*, ¶¶ 5–6.

Generally, Core Scientific's business "is focused on designing, building, and operating digital infrastructure for high performance computing (HPC)," which requires providing and

---

[1]    The case against MARA Holdings includes one additional patent not asserted against Core Scientific. Ferguson Decl., ¶ 4.

[2]    These five patents are U.S. Patent Nos. 8,788,827 (the "827 Patent"); 10,284,370 (the "370 Patent"); 8,666,062 (the 062 Patent); 7,372,960 (the "960 patent"); and 8,532,286 (the "286 Patent") (collectively, the "Asserted Patents") Copies of the patents are attached to the Complaint as Exhibits 1-5.

[3]    Cline Kezar is a Core Scientific employee. His title is Chief of Staff to the Chief Operating Officer. He has personal knowledge of Core Scientific's business, technology offerings, and operations, including its digital asset mining business that is relevant to this lawsuit. *See generally* Kezar Decl.

operating "dedicated data centers for third-party customers." Kezar Decl., ¶¶ 3, 4. This includes what Core Scientific refers to as "colocation," i.e., "activities such as cloud computing, machine learning, and artificial intelligence." *Id.*, ¶ 4. Core Scientific currently operates 10 such data centers in the United States, including three in Texas, located in Denton, Austin, and Pecos. *Id.*, ¶¶ 8-10; *see also* Ferguson Decl., Ex. H at 13 (identifying the data centers).[4]

In addition to its HPC business, Core Scientific has "historically focused on designing, developing and operating digital infrastructure to engage in digital asset mining for its own account and providing hosting solutions for third-party digital asset miners." *Id.*; *see also* Kezar Decl., ¶¶ 5–6 (describing Core Scientific's "mining" activities, both for its own account and for third parties).[5] For venue purposes, Plaintiffs point to Core Scientific's Denton, Texas data center as a location where its "bitcoin mining operations" allegedly take place. Dkt. 1, ¶ 111.

Core Scientific has been "in the process of allocating and converting a significant portion" of its data centers from bitcoin mining operations to supporting "artificial intelligence-related workloads" for delivering "next generation colocation services." Ferguson Decl., Ex. H at 13; *see also* Kezar Decl., ¶¶ 7, 11. This transition was publicly announced by Core Scientific. *See id.*, ¶ 7 ("Core Scientific has publicly announced its intention to phase out of the digital asset mining business altogether in favor of pursuing its HPC business."); *id.*, ¶ 11.

Core Scientific's Denton data center was part of this transition. On November 20, 2024, Core Scientific announced that the Denton data center would "host one of the largest GPU

---

[4]    Page number cites to this exhibit are to the PDF page number.

[5]    Bitcoin and other digital assets are "mined" using dedicated computers referred to colloquially as "miners." See Kezar Decl., ¶ 5; Ferguson Decl., Ex. H at 13 ("We employ our own large fleet of computers ('miners') to earn digital assets for our own account.").

supercomputers in North America, power artificial intelligence." Ferguson Decl., Ex. I (press release); Kezar Decl., ¶ 12. This transition was successfully completed by the end of 2024:

> By the end of 2024, the Denton data center was fully converted to supporting HPC workloads. The last mining machines were turned off on December 12, 2024, and all mining machines were removed from the Denton data center and sent to Core Scientific's other data centers. Most of the mining machines in Denton were relocated to the Pecos, Texas data center…. By the end of 2024 there was no longer any digital asset mining taking place at the Denton facility, whether for Core Scientific or third parties.

Kezar Decl., ¶ 12. This was a widely publicized event. *See* Ferguson Decl., Ex. J (Core Scientific December 2024, LinkedIn post); Ex. K (November 21, 2024, *Denton Record-Chronicle* news article, stating that "Austin-based Core Scientific has ditched its crypto mining plans in Denton and now will be dedicating 100% of its Denton data center to high-performance computing for artificial intelligence"). In December 2024, Core Scientific posted the following on its LinkedIn account:



Ferguson Decl., Ex. J.

While all bitcoin mining had ceased in the Denton data center by the end of 2024, Core Scientific still has data centers engaged in bitcoin mining, including its Pecos data center. Kezar Decl., ¶ 13. This too was widely communicated in fall 2024 through Core Scientific's public statements:





Ferguson Decl., Ex. L, Ex. M. Thus, months before the Complaint in this action was filed (May 12, 2025), it was public knowledge that Core Scientific had bitcoin mining operations in Pecos, but none in Denton.

As explained above, the activities in the Denton data center are indicative of Core Scientific's strategic decision in 2024 to phase out of the bitcoin mining business in favor of the growing demand for HPC solutions. *See* Ferguson Decl., Ex. H at 48 (discussing the risks of bitcoin mining and explaining that "[a]s a result, we initiated a significant strategic transition from bitcoin mining to colocation services for customers employing HPC workloads such as artificial intelligence-related applications."); *see also* Kezar Decl., ¶¶ 7, 11.

## II.    LEGAL STANDARDS

Under 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses." District courts have "broad discretion in deciding whether to order a transfer." *Olivistar, LLC v. Facebook, Inc.*, No. 2:14-CV-341-JRG, 2015 WL 13390509, at *1 (E.D. Tex.

5

Mar. 26, 2015). The Court is "permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

For a transfer to be granted, the moving party must first demonstrate "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Kranos IP Corp. v. Riddell Inc.*, No. 2:17-cv-443-JRG, 2017 WL 3704762, at *10 (E.D. Tex. Aug. 28, 2017) (quoting *In re Volkswagon AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagon I*")). If that threshold is met, then courts analyze "both public and private factors relating to the convenience of parties and witnesses, as well as the interests of particular venues in hearing the case." *Kranos IP*, 2017 WL 3704762, at *10 (citing *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963) and *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009)).[6] The factors are not meant to be merely tallied in making the decision to transfer. *See In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013) ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology.").

The Fifth Circuit holds that the movant must establish that the transferee venue is "clearly more convenient," that is, show that "the marginal gain in convenience will be *significant*" and

---

[6]    The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen*, 371 F.3d at 203. The public factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*.

that "its evidence makes it plainly obvious" that the marginal gains "will *actually* materialize in the transferee venue." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (emphasis in original).

## III.    ARGUMENT

Plaintiffs seemingly have no connection to this District, and any connection that Core Scientific may have had no longer exists with it abandoning its bitcoin mining business in the Denton data center as of December 2024. The Western District of Texas, as elaborated below, is the center of gravity for the allegations in the Complaint and is both a proper and clearly more convenient forum. The Court should transfer this case to the Western District of Texas.

### A.    Plaintiffs Could Have Brought this Action in the Western District of Texas

As to the threshold question, the Western District of Texas has subject matter jurisdiction, personal jurisdiction, and venue over this action. First, like this District, the Western District possesses original jurisdiction to hear actions for patent infringement. *See* 28 U.S.C. § 1338(a). Second, as Plaintiffs recognize, Core Scientific has "committed acts within" the Western District giving rise to this action (via its Pecos data center) and regularly conducts business in the Western District (through its Austin and Pecos data centers), providing personal jurisdiction for over Core Scientific in the Western District. *See* Dkt. 1, ¶¶ 110, 111 ("Core Scientific also owns, leases, and/or operates bitcoin mining facilities in Pecos, Texas, and data center facilities in Austin, Texas."); *see also* Kezar Decl., ¶¶ 9, 10, 13. And regardless, Core Scientific consents to personal jurisdiction in the Western District.

In addition, under 28 U.S.C. § 1400(b), a suit for "patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Again, Plaintiffs' allegations of infringement concerning bitcoin mining (which are sufficient to find "acts of infringement" for venue purposes) and Core Scientific's facilities in Pecos and Austin (which are "regular and

established places of business") provide proper venue in the Western District. *See* Dkt. 1, ¶ 111 ("Core Scientific also owns, leases, and/or operates bitcoin mining facilities in Pecos, Texas, and data center facilities in Austin, Texas."); *Raytheon Co. v. Cray, Inc.*, 258 F.Supp.3d 781, 788, 797 (E.D. Tex. June 29, 2017) (noting that "courts have consistently held that an *allegation* of infringement is itself sufficient to establish venue" and "any [] type of physical presence in the district favors a finding" of a regular and established place of business (quotation omitted)). Further, Core Scientific consents to venue in the Western District.

**B.    The Western District of Texas is Clearly a More Convenient Venue**

This case presents a situation where "[t]he only connection between this case and the [original forum] is plaintiffs' choice to file there." *In re TikTok*, 85 F.4th 352, 366 (5th Cir. 2023). The facts show that, between this District and the Western District, the center of gravity lies in the Western District. *In re Google LLC*, 58 F.4th 1379, 1385 (Fed. Cir. 2023) (ordering transfer to another venue when the "center of gravity of this action, focusing on the *Volkswagon* factors and the overriding convenience inquiry" was clearly there).

**1.    Each Public Factor Supports Transfer or is Neutral**

The public factors analyzed for the purposes of transfer are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law. *See Volkswagen I*, 371 F.3d at 203.

Starting with court congestion, the Eastern District of Texas and Western District of Texas proceed at approximately the same pace. *See* Ferguson Decl., Ex. N, Ex. O. This factor is neutral.

The second public interest factor, the local interest, firmly favors transfer. The Western District has a greater localized interest in the resolution of this matter. "The place of the alleged

8

wrong is one of the most important factors in venue determinations." *Defense Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022). Here, none of the allegedly infringing activity—i.e., the events that gave rise to this suit—currently takes place in this District. Kezar Decl., ¶ 12. Instead, the bitcoin mining that Plaintiffs allege infringe the Asserted Patents has occurred and continues to occur in Pecos. *Id*., ¶ 13; *see Clarke*, 94 F.4th at 511 (directing Courts to consider "the significant connections between a particular venue and the events that gave rise to a suit").

Moreover, Core Scientific has no employees in this District with responsibilities relating to its digital asset mining business, nor does it have any relevant evidence (e.g., documents, source code, or mining machines) in this District. Kezar Decl., ¶¶ 12, 14-15, 23-25. *See In re Google LLC*, 855 F. App'x 767, 768 (Fed. Cir. 2021) ("Google's mere presence in the Western District of Texas insofar as it is not tethered to the events underlying the litigation is not entitled to weight in analyzing the local interest factor in this case.").[7]

In contrast, the Western District is the "center of gravity" of Core Scientific's accused functionalities. *Google*, 58 F.4th at 1385. Until March 2025, Core Scientific's corporate headquarters was in Austin at its data center campus there. Kezar Decl., ¶ 9. Although the corporate headquarters have recently moved to Miami, Florida, the highest concentration of Core Scientific employees knowledgeable regarding Core Scientific's operations continues to be the Austin campus, where over 50 employees are currently based. *Id*. Further, Core Scientific's Pecos data center continues to perform bitcoin mining. *Id*., ¶ 13. Therefore, the Western District

---

[7]     To be sure, Core Scientific's decision to remove its bitcoin mining business from the Denton data center had nothing to do with this case. As to bitcoin mining, Core Scientific had exited Denton by the end of 2024 for publicly documented business reasons. Kezar Decl., ¶¶ 11-12; Ferguson Decl., Exs I, J, K. Plaintiffs admit that they did not make Core Scientific aware of their patent allegations until March 28, 2025. Dkt. 1, ¶ 105 (stating that "Malikie sent a first letter to Core Scientific on March 28, 2025").

has the most interest in the outcome of this case, given both the accusations of infringement that implicate Core Scientific are grounded in activities in the Western District and Core Scientific has a significant presence there. *See Kranos IP*, 2017 WL 3704762, at *13 (finding that "the Court is persuaded that the residents of northern Illinois have a stronger interest in this particular patent dispute than do the residents of this District"); *see also* Section III.B.2 *infra* (discussing the private factors). Accordingly, this factor favors transfer.

Factors 3 and 4 are neutral as both forums are familiar with patent law and there are no expected conflicts of law issues. *See Network Protection Scis., LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-JRG, 2012 WL 194382, at *7 (E.D. Tex. Jan. 23, 2012).

## 2. Each Private Factor Also Supports Transfer or is Neutral

The private factors to be considered are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *See Volkswagen I*, 371 F.3d at 203.

For (1), the predominant sources of proof in this case will come from Core Scientific, seeing as it is the alleged infringer. *See R2 Sol'ns LLC v. Target Corp.*, No. 4:21-CV-92, 2021 WL 2550908, at *2 (E.D. Tex. June 22, 2021) ("Most evidence in patent infringement cases comes from the defendants so the place where the defendant's documents are kept weighs in favor of transfer to that location."). Core Scientific possesses no physical documents or evidence within the Eastern District. *See* Kezar Decl., ¶¶ 12, 14, 15; *TikTok*, 85 F.4th at 358 (noting this factor "weighs in favor of transfer where the current district lacks any evidence relating to the case"). Relevant technical, marketing, financial, and business strategy documents and records that Core Scientific has are maintained on the "company's share drive," which is accessible at Core Scientific's Austin campus in the Western District. *See* Kezar Decl., ¶ 23. While

10

electronically stored evidence makes this factor less impactful, courts should still consider "the location of document custodians and [the] location[s] where documents are created and maintained." *Cerence Operating Co. v. Samsung Elec. Co., Ltd.*, No. 2:23-cv-0482-JRG-RSP, 2025 WL 755219, at *4 (E.D. Tex. Mar. 10, 2025); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008) ("*Volkswagon II*") (holding that while "access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments [that] does not render this factor superfluous"); *In re Quest Diagnostics, Inc.*, 2021 WL 5230757 (Fed. Cir. Nov. 10, 2021) ("While electronic storage makes documents more widely accessible, this factor remains relevant.").

Further, the mining machines themselves, which are at the crux of Plaintiffs' infringement allegations, are found in the Western District and will be available for inspection there. *See* Dkt. 1, ¶¶ 122-123; Kezar Decl., ¶¶ 13, 24; Ferguson Decl., Exs. L, M.[8] The presence of physical evidence in the Western District favors transfer. *Kranos IP*, 2017 WL 3704762, at *11; *Google*, 58 F.4th at 1385 (explaining that "[p]hysical prototypes of the accused products have been identified only as in the Northern District of California"). Source code designed by Core Scientific is also accessible from the Western District. Kezar Decl., ¶ 25; *TikTok*, 85 F.4th at 359 (explaining that source code is an important consideration because it is generally not "equally

---

[8]    A mining machine operates and functions the same no matter what data center houses it. Kezar Decl., ¶ 12.

accessible in either forum" due to confidentiality protections). Therefore, this factor overall favors transfer.[9]

Concerning private factor (2), compulsory process, Core Scientific is not presently aware of any non-party witnesses impacted by the provisions of Fed. R. Civ. P. 45. The inventors are based in Canada, and Core Scientific has not yet identified any third-party prior art witnesses within the subpoena power of either forum that may have relevant information. This factor is thus neutral. *Kranos IP*, 2017 WL 3704762, at *11.

For factor (3) (willing witnesses), the cost (and ease) of attendance for Core Scientific's witnesses would be significantly lower in the Western District as compared to this District. *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) ("The convenience of witnesses is probably the single most important factor."); *Google*, 58 F.4th at 1383 ("The district court held that the 'cost of attendance for willing witnesses' factor weighed only slightly in favor of transfer. This was clearly erroneous as this factor weighs heavily in favor of transfer."). At the outset, Core Scientific's most relevant witnesses are in the Western District, compared to none in the Eastern District. *See* Kezar Decl., ¶¶ 14-21. Core Scientific presently expects that upwards of seven of its employees will testify at trial, and all but one are found in the Western District. These witnesses, and their relevant knowledge, are as follows (*see id.*):

| Name | Role and Subject Matter Testimony | Location |
|------|-----------------------------------|----------|
| Cline Kezar | Chief of Staff to the Chief Operating Officer. Mr. Kezar is responsible for the digital asset mining operations of Core Scientific, which is the accused technology in the case. | Austin, TX |

---

[9]     Plaintiffs' documents do not change this as for "documents well outside the United States, the relative ease of access" does "not substantially change across different districts and is thus neutral." *Cerence*, 2025 WL 755219, at *4.

| Matt Brown | Chief Operating Officer. Mr. Brown is knowledgeable regarding Core Scientific's history, its day-to-day operations, and the operations of the digital asset mining business. | Austin, TX |
|---|---|---|
| Colin Stewart and/or David Zack Callaway | Mr. Stewart is Core Scientific's Director, Operations Center. Mr. Callaway is Core Scientific's Manager, Mining Operations Center. Both are knowledgeable regarding Core Scientific's continuous monitoring of the performance of its mining machines, including power consumption and hash rate.[10] The monitoring process is an important part of Core Scientific's mining business. | Austin, TX |
| Larry Kom | Mr. Kom is Core Scientific's Chief Technology Officer. He has knowledge of the technical aspects of Core Scientific's business, including its HPC and digital asset mining businesses. | Wilmington, N.C. |
| Nancy Mann | Core Scientific's Controller. Ms. Mann has knowledge of Core Scientific's financial reporting and management, and financial metrics associated with its mining business. | Austin, TX |
| Jack Smith | VP, Finance Operations and Internal Controls. Mr. Smith is knowledgeable regarding Core Scientific's day-to-day financial operations and financial metrics associated with the mining business. | Austin, TX |
| Cynthia Chabarria | Pecos Data Center Site Manager. As the Site Manager, Ms. Chabarria is knowledgeable regarding the digital asset mining operations taking place in the Pecos data center. | Pecos, TX |

While Core Scientific understands that the Court "gives the convenience of employee witnesses less weight," *Kranos IP,* 2017 WL 3704762, at *12, this factor still favors transfer because "it is more convenient for witnesses to testify at home," as "additional distance means additional travel

---

[10]     Hash rate is the speed at which the mining machines can perform the calculations necessary to secure a blockchain during the mining process. Kezar Decl., ¶ 17; *see also* Dkt. 1, ¶¶ 42, 43 (pointing to Core Scientific's hash rate).

time" along with "meal and lodging expenses" and "personal costs associated with being away from work, family, and community." *TikTok*, 85 F.4th at 366; *Google*, 58 F.4th at 1383. For the witnesses located in Austin, it would be significantly more convenient for them to testify at trial in Austin instead of Marshall. Kezar Decl., ¶ 21. It will also be slightly more convenient for Mr. Kom and Ms. Chabarria to testify in Austin over Marshall because in Austin they will have access to, and can work out of, the Core Scientific Austin campus. *Id.*, ¶ 22.

This factor is not impacted by other witnesses. Plaintiffs are based in Ireland and their witnesses, to the extent that they have any, will need to travel a great distance no matter what. Plaintiffs also use a third-party licensing company named Patent Platform Services ("PPS") to represent them in licensing matters. Ferguson Decl., ¶ 21. Although its mailing address is indicated on its website as being in Frisco, to the extent any testimony from PPS might be relevant, its founder Paul Riley is in the Philadelphia, PA area, and the only individual from PPS that has communicated with Core Scientific's counsel is Steven MacKenzie, and he is based in Wichita, Kansas. *Id.*, Ex. P, Ex. Q. Both Mr. Riley and Mr. MacKenzie, to the extent that they might be witnesses, will therefore have significant travel to either the Western or the Eastern District. And regardless, Plaintiffs already have a pending case in the Western District involving the same five patents, showing that any witnesses Plaintiffs might call expect to travel to the Western District in any event. *See* Ferguson Decl., ¶¶ 3-4, Ex. A.[11]

Finally, factor (4) considers any other relevant practical considerations. First, Core Scientific promptly filed this motion—nine weeks after being served with the Complaint on May 15, 2025. *Cf. Cerence*, 2025 WL 755219, at *6 ("The Fifth Circuit as well as other circuits have

---

[11]    Along with the *Mara Holdngs* case, Plaintiffs have two other cases pending in the Western District, and one of the Plaintiffs has an additional case pending there. Ferguson Decl., ¶ 5.

emphasized that a party should not delay filing of a motion to transfer.") (citing *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989)). Second, there is already a co-pending case concerning the Asserted Patents and the accused bitcoin mining technology in the Western District. Ferguson Decl., ¶¶ 4-5; *see In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (finding "the co-pendency of cases involving the same patent [is a] permissible consideration[] in ruling on a motion to transfer venue"); *Allergan Sales, LLC v. UCB, Inc.*, No. 2:15-cv-1001-JRG-RSP, 2016 WL 8201783, at *2 (E.D. Tex. Nov. 2, 2016). Therefore, maintaining both suits in a single forum would reduce any possible inconsistencies in rulings related to the patents, such as claim construction and validity. Third, this Court has not heavily invested resources into this case. *See Klausner Techs., Inc. v. Interactive Intel. Grp., Inc.*, 2012 WL 13012618, at *4 (E.D. Tex. Sept. 26, 2012) (finding this factor neutral for case "still in its infancy" because "no discovery or status conference has taken place yet"). Taking these points collectively, this factor favors transfer.

## IV.    CONCLUSION

On balance, the factors that support transfer, including the convenience of the willing witnesses, which is the "single most important factor in the transfer analysis, *Genentech*, 566 F.3d at 1343, point to the conclusion that Core Scientific has carried its burden by showing that the Western District is a clearly more convenient forum for this case. Core Scientific respectfully requests that the Court transfer this action to the United States District Court for the Western District of Texas.

Dated: July 24, 2025                                    Respectfully submitted,

                                                        */s/ Brian E. Ferguson*
                                                        Brian E. Ferguson
                                                        WINSTON & STRAWN LLP
                                                        1901 L Street, N.W.
                                                        Washington, D.C. 20036

Tel: (202) 282-5276
Email: beferguson@winston.com

Rex A. Mann
WINSTON & STRAWN LLP
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Tel: (214) 453-6500
Email: rmann@winston.com

***Attorneys for Core Scientific, Inc.***

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), counsel for Defendant met and conferred with counsel for Plaintiffs by Teams videoconference on July 18, 2025, and by email on July 1, July 15, and July 16, 2025, and counsel for Plaintiffs indicated that Plaintiffs oppose this motion.

/s/ *Brian E. Ferguson*
Brian E. Ferguson

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document has been served on counsel of record, who are deemed to have consented to electronic service, on July 24, 2025, via electronic filing using the Court's CM/ECF system.

/s/ *Brian E. Ferguson*
Brian E. Ferguson