**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| Malikie Innovations Ltd. and<br>Key Patent Innovations Ltd., | § | |
| Plaintiffs, | § | Case No. 2:25-CV-519-JRG-RSP |
| v. | § | JURY TRIAL DEMANDED |
| Core Scientific, Inc. | § | |
| Defendant. | § | |

**PLAINTIFFS MALIKIE INNOVATIONS LTD. AND KEY PATENT INNOVATIONS LTD.'S OPPOSITION TO DEFENDANT CORE SCIENTIFIC, INC.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. RESPONSE TO STATEMENT OF ISSUES ........ 2

III. APPLICABLE LAW ........ 2

IV. DEFENDANT FAILS TO PROVE THAT ANY ASSERTED PATENT IS INVALID ...... 4

A. The ’960 and ’062 Patents Claim Eligible Subject Matter ........ 4

i. *Alice* Step 1: ’960 and ’062 patent claims are directed to specific improvements in how computers perform finite field operations ........ 4

ii. *Alice* Step 2: The claims recite inventive concepts ........ 12

iii. Claim 3 of the ’960 patent is not representative ........ 14

B. The ’827 and ’370 Patents Claim Eligible Subject Matter ........ 16

i. *Alice* Step 1: ’827 and ’370 patent claims are directed to specific improvements in digital signature verification ........ 16

ii. *Alice* Step 2: The claims recite inventive concepts ........ 23

iii. Claim 1 of the ’827 patent is not representative ........ 24

C. The ’286 Patent Claims Eligible Subject Matter ........ 25

i. *Alice* Step 1:’286 patent claims are directed to specific improvements in how computers perform modular reduction operations ........ 25

ii. *Alice* Step 2: The claims recite inventive concepts ........ 28

iii. Claim 1 of the ’286 patent is not representative ........ 30

V. CONCLUSION ........ 30

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aatrix Software, Inc. v. Green Shades Software*,
882 F.3d 1121 (Fed. Cir. 2018)........................................................................... *passim*

*Alice Corp. Pty. v. CLS Bank Int'l*,
573 U.S. 208 (2014)........................................................................................... *passim*

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016).........................................................................10, 21, 28

*Ancora Techs. v. HTC Am., Inc.*,
908 F.3d 1343 (Fed. Cir. 2018)..................................................................................12

*Autumn Cloud LLC v. TripAdvisor, Inc.*,
2017 WL 1856232 (E.D. Tex. Apr. 3, 2017), *report and recommendation adopted*,
2017 WL 1838145 (E.D. Tex. May 6, 2017).................................................................4

*BASCOM Glob. Internet Servs. v. AT&T Mobility*,
827 F.3d 1341 (Fed. Cir. 2016).........................................................................3, 9, 12, 21

*In re Bd. of Trs. of Leland Stanford Junior Univ.*,
991 F.3d 1245 (Fed. Cir. 2021)..............................................................................11, 12

*Broadband iTV, Inc. v. Amazon.com, Inc.*,
113 F.4th 1359 (Fed. Cir. 2024) ..................................................................................11

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019)..........................................................................3, 13, 14

*Commc'n Interface Techs., LLC v. Albertson's LLC*,
2021 WL 4453580 (E.D. Tex. Sept. 29, 2021) ..............................................................21

*Contour IP Holding LLC v. GoPro, Inc.*,
113 F.4th 1373 (Fed. Cir. 2024) ..............................................................................2, 3

*Core Wireless Licensing S.A.R.L. v. LG Elecs.*,
880 F.3d 1356 (Fed. Cir. 2018)....................................................................................2

*CosmoKey Sols. GmbH & Co. KG v. Duo Security LLC*,
15 F.4th 1091 (Fed. Cir. 2021) (Reyna, J. concurring)...................................................7

*Cryptopeak Sols., LLC v. Lowe's Home Ctrs., LLC*,
2016 WL 7198705 (E.D. Tex. Sept. 9, 2016), *report and recommendation adopted*, 2016 WL 5430830 (E.D. Tex. Sept. 29, 2016) ...........................................10, 21, 28

*Customedia Techs., LLC v. Dish Network Corp.*,
951 F.3d 1359 (Fed. Cir. 2020)....................19

*Diamond v. Diehr*,
450 U.S. 175 (1981)....................22

*DigitalDoors, Inc. v. Cathay Bank*,
2025 WL 957210 (E.D. Tex. Mar. 10, 2025), *report and recommendation adopted*,
2025 WL 950545 (E.D. Tex. Mar. 28, 2025)....................11

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014)....................11

*Electric Power Group, LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)....................14

*Emerging Auto. LLC v. Kia Corp.*,
2025 WL 964031 (E.D. Tex. Mar. 31, 2025) (Gilstrap, J.)....................14

*Enfish, LLC v. Microsoft Corp.*
822 F.3d 1327 (Fed. Cir. 2016).................... *passim*

*First-Class Monitoring, LLC v. United Parcel Serv. of Am., Inc.*,
389 F. Supp. 3d 456 (E.D. Tex. 2019)....................14

*Gottschalk v. Benson*,
409 U.S. 63 (1972)....................24

*GREE Inc. v. Supercell OY*,
2020 WL 896771 (E.D. Tex. Jan. 21, 2020), *report and recommendation adopted*,
2020 WL 887733 (E.D. Tex. Feb. 24, 2020).................... *passim*

*GREE Inc. v. Supercell OY*,
2020 WL 897250 (E.D. Tex. Jan. 5, 2020), *report and recommendation adopted*,
202 WL 887734 (E.D. Tex. Feb. 24, 2020)....................9

*GREE, Inc. v. Supercell Oy*,
2020 WL 475443 (E.D. Tex. Jan. 29, 2020) (Gilstrap, J.)....................15

*Infernal Tech., LLC v. Sony Interactive Ent. LLC*,
2021 WL 5804262 (E.D. Tex. Dec. 7, 2021)....................8

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016)....................11

*Internet Pats. Corp. v. Active Network, Inc.*,
790 F.3d 1343 (Fed. Cir. 2015)....................9, 27

*Jawbone Innovations, LLC v. Panasonic Holdings Corp.*,
2024 WL 1298355 (E.D. Tex. Mar. 7, 2024), *report and recommendation adopted*,
2024 WL 1289450 (E.D. Tex. Mar. 26, 2024) ....................28

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019)....................9, 20, 26

*Lionra Techs. Ltd. v. Fortinet, Inc.*,
2023 WL 3105135 (E.D. Tex. Apr. 8, 2023), *report and recommendation adopted*,
2023 WL 3105064 (E.D. Tex. Apr. 26, 2023)....................7

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
66 F. Supp. 3d 829 (E.D. Tex. 2014) (Bryson, J.) ....................22

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
566 U.S. 66 (2012)....................23

*McRO, Inc. v. Bandai Namco Games Am. Inc.,*
837 F.3d 1299 (Fed. Cir. 2016)....................20

*Microsoft Corp. v. i4i Ltd. P'ship*,
564 U.S. 91 (2011)....................3

*Miller Mendel, Inc. v. City of Anna*,
107 F.4th 1345 (Fed. Cir. 2024) ....................14, 24, 30

*MyMail, Ltd. v. ooVoo, LLC*,
934 F.3d 1373 (Fed. Cir. 2019)....................3, 9, 10, 29

*Optis Cellular Tech., LLC v. Apple Inc.*,
139 F.4th 1363 (Fed. Cir. 2025) ....................11

*Parker v. Flook*,
437 U.S. 584 (1978)....................21, 22

*PersonalWeb Technologies LLC v. Google LLC*,
8 F.4th 1310 (Fed. Cir. 2021) ....................14, 19, 23, 24

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)....................10

*Powerblock Holdings, Inc. v. iFit, Inc.*,
2025 WL 2301853 (Fed. Cir. Aug. 11, 2025)....................3, 7, 20

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
404 F. Supp. 3d 1021 (E.D. Tex. 2019) (Gilstrap, J.)....................15, 24

*Quest NetTech Corp. v. Apple, Inc.*,
2020 WL 13538609 (E.D. Tex. Feb. 18, 2020) ....29

*Rapid Litig. Mgmt. v. CellzDirect*,
827 F.3d 1042 (Fed. Cir. 2016)....12

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)....23, 24

*Sycamore IP Holdings LLC v. AT & T Corp.*,
294 F. Supp. 3d 620 (E.D. Tex. 2018) (Bryson, J.) ....10

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020)....2, 27

*Thales Visionix Inc. v. United States*,
850 F.3d 1343 (Fed. Cir. 2017)....9, 20, 22, 27

*Tiare Tech., Inc. v. Whataburger Rests., LLC*,
2023 WL 2733348 (E.D. Tex. Mar. 15, 2023), *report and recommendation adopted*, 2023 WL 2716576 (E.D. Tex. Mar. 29, 2023)....16, 25, 30

*Torus Ventures LLC v. Cawley Partners, LLC*,
2025 WL 1799327 (E.D. Tex. June 30, 2025)....9, 11, 13, 14

*TQP Dev., LLC v. Intuit Inc.*,
2014 WL 651935 (E.D. Tex. Feb. 19, 2014) ....20, 21, 24

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th 1355 (Fed. Cir. 2023) ....2, 20

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
957 F.3d 1303 (Fed. Cir. 2020)....3, 8

*Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*,
2018 WL 4927279 (E.D. Tex. Sept. 18, 2018) ....9, 27

*Visual Memory LLC v. NVIDIA Corp.*,
867 F.3d 1253 (Fed. Cir. 2017)....3, 4, 7

*Wetro Lan LLC v. Phoenix Contact USA Inc.*,
2016 WL 1228746 (E.D. Tex. Mar. 29, 2016) ....29

*Zilkr Cloud Techs., LLC v. Cisco Sys., Inc.*,
2023 WL 4281746 (E.D. Tex. June 12, 2023), *report and recommendation adopted*, 2023 WL 4271524 (E.D. Tex. June 29, 2023)....10, 11, 30

**Statutes**

35 U.S.C. § 101 .......... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 1, 3, 4

Fed. R. Civ. P. 12(c) .......... 9

## I. INTRODUCTION

Defendant tries to minimize the inventive character of the patents and claims at issue by wrongly analogizing them to "manifestations of nature" like "$E=mc^2$" and the "law of gravity." A straightforward review of the record, including allegations pled in Plaintiffs' Complaint, disproves Defendant's arguments that the claims at issue are not patent eligible under 35 U.S.C. § 101.

Malikie alleges infringement of U.S. Patent Nos. 8,788,827 (the "'827 Patent"); 10,284,370 (the "'370 Patent"); 8,666,062 (the "'062 Patent"); 7,372,960 (the "'960 patent"); and 8,532,286 (the "'286 Patent") (collectively, the "Asserted Patents"). These patents were invented by technologists at Certicom, the long- and widely-held authority in elliptic curve cryptography (ECC). Certicom revolutionized digital security by introducing ECC cryptosystems and methods that are fast and efficient, making ECC a feasible and practical option for securing electronic communications. The claims of the Asserted Patents recite inventive and non-abstract improvements over pre-existing methods relating to applications of ECC that make cryptographic systems and operations more efficient.

Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and 35 U.S.C. § 101 (Dkt. 20) fails to carry the burden of proving, by clear and convincing evidence, that any asserted claim of any Asserted Patent is abstract or non-inventive. Defendant's Motion should be denied because the non-abstract nature of the claims is demonstrated through specific elements that embody technological inventions—unconventional and non-routine ways to achieve improvements to the state of the art at their respective times of invention. Plaintiffs' well-pled allegations of inventiveness, coupled with the detailed specifications behind each claim, also show that the claims recite non-routine and non-conventional techniques that were previously unknown in the art, making each claim patent-eligible under *Alice* Step 1, and (should the Court need to reach it) under *Alice* Step 2.

## II. RESPONSE TO STATEMENT OF ISSUES

Defendant's Statement of Issues mischaracterizes what the claims of the Asserted Patents are directed to for purposes of 35 U.S.C. § 101. The issues are whether Plaintiff's complaint adequately alleges facts foreclosing resolution of the subject matter eligibility question as a matter of law, whether factual and/or claim construction issues preclude dismissal at the pleadings stage, and whether Defendant has proven ineligibility by clear and convincing evidence.

## III. APPLICABLE LAW

Anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. Laws of nature, natural phenomena, and abstract ideas are not patent-eligible. Courts must distinguish patents that claim abstract ideas from those that claim patent-eligible applications of those ideas using the Supreme Court's two-step analytical framework. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216-17, 221 (2014). At Step 1, courts must consider the claims "in their entirety" to determine "whether their character as a whole" is "directed to" an abstract idea. *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1378 (Fed. Cir. 2024). That inquiry requires determining "what the patent asserts to be the 'focus of the claimed advance over the prior art.'" *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020). "The Step 1 'directed to' analysis … depends on an accurate characterization of what the claims require and of what the patent asserts to be the claimed advance. The accuracy of those characterizations is crucial" to the analysis. *Id.* at 1294. Courts must "articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful," *Core Wireless Licensing S.A.R.L. v. LG Elecs.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018), and "without describing the claims at 'such a high level of abstraction[…]' that the claims would be virtually guaranteed to be abstract," *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361 (Fed. Cir. 2023). If the claims are "directed to an

improvement to computer functionality" itself instead of tasks where "computers are invoked merely as a tool," then the claims are not abstract and are patent-eligible. *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1258 (Fed. Cir. 2017); *see also Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020) (collecting cases). It is "appropriate to consider the technological improvement embodied in the claims at step one." *Visual Memory*, 867 F.3d at 1258; *see also Powerblock Holdings, Inc. v. iFit, Inc.*, 2025 WL 2301853, at *3 (Fed. Cir. Aug. 11, 2025). If the focus of the claims is "not directed to an abstract idea, the *Alice* inquiry ends." *Contour*, 113 F.4th at 1378.

If the claims are found to be abstract at *Alice* Step 1, then at Step 2 courts must ''consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application.'' *Uniloc*, 957 F.3d at 1306 (quoting *Alice*, 573 U.S. at 217). Step 2 "is satisfied when the claim limitations involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Aatrix Software, Inc. v. Green Shades Software*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) (cleaned up). "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art" because "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs. v. AT&T Mobility*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

Patent ineligibility must be proven by clear and convincing evidence. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 (2011)). Patent eligibility is a question of law, based on underlying factual findings. *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019). It may be resolved on a Rule 12(b)(6) motion "only when there are no factual allegations that, taken as true, prevent resolving

the eligibility question as a matter of law." *Aatrix*, 882 F.3d at 1125. "Whether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact," and "patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)." *Id.* at 1126-28. Factual inquiries may also inform the Step 1 analysis. *Aatrix.* 882 F.3d at 1127; *Visual Memory*, 867 F.3d at 1261-62. Where claim construction would materially inform a § 101 analysis, a Rule 12(b)(6) motion should be denied. *See*, *e.g.*, *Autumn Cloud LLC v. TripAdvisor, Inc.*, 2017 WL 1856232, at *1 (E.D. Tex. Apr. 3, 2017), *report and recommendation adopted*, 2017 WL 1838145 (E.D. Tex. May 6, 2017).

## IV. DEFENDANT FAILS TO PROVE THAT ANY ASSERTED PATENT IS INVALID

### A. The '960 and '062 Patents Claim Eligible Subject Matter

#### i. *Alice* Step 1: '960 and '062 patent claims are directed to specific improvements in how computers perform finite field operations.

The '960 and '062 Patents are directed to specific improvements in how computers perform finite field operations such that performance is enhanced, including through more efficient utilization of memory and processor resources. Dkt. 1., ¶¶90-92. In an elliptic curve cryptosystem, a private key/public key pair is based on parameters of an elliptic curve having a specified finite field, *i.e.*, points on the elliptic curve that satisfy the curve's equation. *Id.*, ¶¶84-86 (citing '960 Pat., 1:40-65).[1] The patents explain the technological problems inherent in how computers were conventionally programed to perform finite field calculations. *Id.*, ¶¶87-89. For example, prior cryptosystems used either a specific method for a specific finite field or a generic method usable in any finite field. *Id*. (citing '960 Pat., 2:8-24). The former technique had the advantage of being more efficient but suffered from "dramatic" increases in code size, while the latter was less

[1] The '960 and '062 patents share a common specification; only the '960 patent is cited herein.

efficient but had "the advantage of much smaller code size." *Id*. The patents teach methods for performing the calculations that are both efficient and have smaller code size.

The patents also explain that software implementations of finite fields raised questions as to "how to arrange the storage of the bits corresponding to the finite field elements." *Id*. ¶89 (quoting '960 Pat., 2:25-36). Such implementations included representing finite field elements as bits in hardware or software, where the "bits must then be represented in the memory storage of the computer system." *Id.* But conventional CPUs were problematic because "finite field elements are often too long to be represented in a single machine word of the engine (engine word lengths are typically 16, 32, or 64 bit)." *Id*. (quoting '960 Pat., 2:37-50). "Since the finite field [elements] used in ECC operations are typically 160 bits or more, [they] must be represented in several machine words." *Id*. "Engine routines (programs) that provide finite field calculations must therefore deal with multiple machine words to complete their calculations." *Id*. When the number of words for a specific finite field is not known, "general purpose, wordsize non-specific code" had to be built, which was slower but smaller than code tailored to the finite field. *Id*. (quoting '960 Pat., 2:51-59). Computing the results of such operations on ECC finite field elements and storing them in memory entailed complicated operations and "many bit shifts" which "result[ed] in longer processing time and also extra processor operation." Dkt. 1, ¶89; '960 Pat., 2:63-3:30.

To solve these problems, the patents teach improved techniques for computing finite field operations that enable computers to carry out the operations more efficiently. Dkt. 1, ¶90 (citing '960 Pat., 1:66-3:30, 4:10-27). One such solution combines performing "nonreducing" "wordsized" operations on elements represented as a predetermined number of "machine words" to obtain an "unreduced result" with the performance of a "specific" modular reduction of the unreduced result to reduce it to that of a field element. *See*, *e.g.*, '960 Pat., 4:10-26, 7:30-45, 8:26-

60, 11:49-12:6, 15:66-16:7; Dkt. 1, ¶¶91-92. Thus, instead of programming a computer with small (but inefficient) generic code, or significantly larger (but more efficient) field-specific code, the patents teach combining "nonreducing" "wordsized" operations with the performance of a "specific" modular reduction after completing the wordsized operation on each machine word. *Id*. For instance, the patents teach using "wordsized suitable code" capable of operating on finite field elements, "as long as the elements are representable in no more than the given number of words," which produces "unreduced values." '960 Pat., 4:10-26 ("Summary of the Invention"). This is combined with a "[s]pecific reduction [that] is then applied to the unreduced value, as is suitable for the specific finite field." *Id*. This non-conventional technique yields concrete technological benefits, such as "fast engines [that] can be produced for many specific finite fields, without duplicating the bulk of the engine instructions (program)." '960 Pat., 4:10-26; Dkt. 1, ¶¶91-92. This requires fewer "bit shifts" and allows "finite field elements [to] be consistently stored in registers of the same word length," which reduces processing time and processor operations. Dkt. 1, ¶¶91-92 (citing '960 Pat., 3:26-30, 8:46-60; 11:14-19, 11:34-40). Claim 3 of the '960 patent captures one such method of performing finite field operations:

> 3. A method of performing a finite field operation on elements of a finite field, comprising the steps of:
>
> a) representing each element as a **predetermined number of machine words**;
>
> b) performing a **non-reducing wordsized operation** on said representations, said wordsized operation corresponding to said finite field operation;
>
> c) **completing said non-reducing wordsized operation for each word** of said representations to obtain an **unreduced result**;
>
> d) upon computing said unreduced result, **performing a specific modular reduction** of said unreduced result **to reduce said unreduced result to that of a field element of said finite field to obtain a reduced result**; and
>
> e) using said reduced result in a cryptographic operation.

Claim 3 recites a specific, non-abstract technique for performing finite field operations in a way that improves over prior techniques. *CosmoKey Sols. GmbH & Co. KG v. Duo Security LLC*, 15 F.4th 1091, 1100 (Fed. Cir. 2021) (Reyna, J. concurring) ("[G]enerally, if a claim is directed to a specific technological solution to a technological problem, it is not directed to an abstract idea."); *Powerblock*, 2025 WL 2301853 at *4 (reversing ineligibility finding where claim is "limited to a particular type of dumbbell"). As in *Visual Memory*, "this is not a case where the claims merely recite the 'use of an abstract mathematical formula on any general purpose computer,' 'a purely conventional computer implementation of a mathematical formula,' or 'generalized steps to be performed on a computer using conventional computer activity.'" 867 F.3d at 1260. Rather, the claim claims an enhanced way of performing finite field operations that reduces processing time and processor operations, making it "a technological improvement" similar to those deemed patent-eligible by the Federal Circuit. *Id*. at 1259; *Lionra Techs. Ltd. v. Fortinet, Inc.*, 2023 WL 3105135, at *2 (E.D. Tex. Apr. 8, 2023), *report and recommendation adopted*, 2023 WL 3105064 (E.D. Tex. Apr. 26, 2023) ("The Federal Circuit has repeatedly held that claims directed to an improvement in computer or network functionality are patent eligible." (collecting cases)).

The Federal Circuit's decision in *Enfish, LLC v. Microsoft Corp.* is highly instructive. 822 F.3d 1327 (Fed. Cir. 2016). The technology in *Enfish* related to "logical models" in computer databases; the claims claimed new ways of creating logical tables in computer memory. *Id*. at 1336. The Federal Circuit found the claims not abstract at Step 1 because they were not "directed to *any* form of storing tabular data, but instead are specifically directed a *self-referential* table[,]" which the court found different from, and an improvement upon, "conventional" models. *Id.* at 1337 (emphasis in original). The court noted that the "specification's teachings that the claimed invention achieves other benefits over conventional databases, such as increased flexibility, faster

search times, and smaller memory requirements," "bolstered" its finding that the claims were "directed to an improvement of an existing technology." *Id.* "In other words, … the claims are directed to a specific implementation of a solution to a problem in the software arts" and therefore not abstract. *Id*. at 1339. So too here. Claim 3 of the '960 patent does not recite an abstract mathematical formula performed on a generic computer – it is a new technique that improves over then-existing ways of performing finite field operations, resulting in more efficient use of memory and other processor resources. Dkt. 1., ¶¶90-92.

The fact pattern in this Court's *Infernal Tech., LLC v. Sony Interactive Ent. LLC*, 2021 WL 5804262 (E.D. Tex. Dec. 7, 2021) decision is analogous. In *Infernal Tech.*, the patent claimed shadow rendering methods for use in a computer system. 2021 WL 5804262 at *2. Defendant casts the claims as "simply a mathematical calculation on data, which is an abstract idea." *Id*. at *3. But the Court recognized the claims "do not purport to simply take a known mathematical formula that was previously done by pencil and paper and introduce a computer as a tool" but instead "are a method for improving a problem with computers," and found them not abstract. *Id.*; *see also id.* at n.3 ("Claims that seek to ***improve*** the functionality and practical effect of conventional computers—rather than merely use them as a tool—suggest they are not abstract.") (citing *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020)) (emphasis in original). The claims here similarly do not simply take mathematical calculations and apply them on a computer but rather advance computer functionality through specific improvements to a technological process.[2] Dkt. 1, ¶¶88-92.

---

[2] Defendant argues that the tangible benefits of the inventions alleged in the Complaint are not present in the claims. Mot. 14. But claims do not have to recite technological benefits to be non-abstract. *Uniloc*, 957 F.3d at 1309 ("Claims need not articulate the advantages of the claimed combinations to be eligible."). Moreover, whether the benefits recited in the Complaint are present in the claims are factual disputes that preclude dismissal. *See GREE Inc. v. Supercell OY*, 2020 WL

To promote its contention that claim 3 is abstract, Defendant oversimplifies it to nothing more than "a mathematical formula." Mot. 11. The fact that a claim may *involve* math "does not doom the claim to abstraction." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1349 (Fed. Cir. 2017); *Enfish*, 822 F.3d at 1337; *see also Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, 2018 WL 4927279, at *4 (E.D. Tex. Sept. 18, 2018) (finding claim that "provides underlying mathematical improvements" as "part of the greater whole" not abstract). Defendant ignores the claim's *combined* elements that "as a whole" make up a specific method for achieving the desired improvement in *how* computers perform finite field operations. *BASCOM*, 827 F.3d at 1350; *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (Step 1 considers claims "in their entirety"). Defendant also never addresses that the combination of steps describes a way of performing finite field operations that is different from how it was conventionally done; *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150-51 (Fed. Cir. 2019) (reversing grant of Rule 12(c) motion under § 101 where claims are "directed to a non-abstract improvement in an existing technological process").

Defendant also ignores claim construction issues that must be resolved before determining eligibility under § 101.[3] *MyMail*, 934 F.3d at 1379; *GREE Inc. v. Supercell OY*, 2020 WL 897250, at *3 (E.D. Tex. Jan. 5, 2020), *report and recommendation adopted*, 2020 WL 887734 (E.D. Tex.

---

896771, at *6 (E.D. Tex. Jan. 21, 2020), *report and recommendation adopted*, 2020 WL 887733 (E.D. Tex. Feb. 24, 2020). Regardless, the benefits *are* captured in the claims, as explained above.

[3] At this stage, the Court need only resolve claim construction disputes "to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction." *Aatrix*, 882 F.3d at 1125. Full, formal proposed constructions are not necessary now, as the issues can be identified and resolved without them. This is consistent with *Torus Ventures LLC v. Cawley Partners, LLC*, where the plaintiff provided only "conclusory" assertions and "did not proffer any proposed constructions ***nor any explanation*** for why claim construction is necessary." 2025 WL 1799327, at *3 n.1 (E.D. Tex. June 30, 2025) (emphasis added). Here, Plaintiffs provide detailed explanations as to why claim construction is needed.

Feb. 24, 2020) (denying motion to dismiss where "claim construction will likely be helpful to arrive at a full understanding of the basic character of the claimed subject matter" and "may assist the Court in determining what the claims are directed to at *Alice* Step One"). For example, claim 3 of the '960 patent requires that elements be represented as "machine words" and describes operations on "words." The patents' specification indicates that terms like "machine word" and "words" relate to the unit of data (in bits) that a computer processor is capable of retrieving from memory and processing in a given operation, *i.e.*, fundamental aspects of computer architecture and operation. *See*, *e.g.*, '960 pat., at 2:37-50, 10:38-41, 15:66-16:7, 16:15-37; *Sycamore IP Holdings LLC v. AT & T Corp.*, 294 F. Supp. 3d 620, 651 (E.D. Tex. 2018) (Bryson, J.) (reference to "bits" indicates "the invention operates in a digital communication system that is, in all practical applications, computer driven"). Similarly, a "wordsized operation" relates to how computers act on machine words to produce unreduced results. *See*, *e.g.*, '960 pat., at 4:17-23, 7:41-43, 8:40-45. And "non-reducing…operation," "unreduced result," and "reduced result" relate to whether the bitlength of a result is lowered to fit into a number of machine words. *See*, *e.g.*, *id*. at., 8:51-60, 11:55-61. These terms (all terms of art) show that the claim relates to improvements in computer architecture and operations and describes the "unconventional technological solution" captured therein. *See Cryptopeak Sols., LLC v. Lowe's Home Ctrs., LLC*, 2016 WL 7198705, at *6 (E.D. Tex. Sept. 9, 2016), *report and recommendation adopted*, 2016 WL 5430830 (E.D. Tex. Sept. 29, 2016); *see also Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300 (Fed. Cir. 2016). Defendant's overgeneralization of the claims ignores the meaning of these terms of art, which must be properly understood before addressing patent eligibility. *MyMail*, 934 F.3d at 1379; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005); *see Zilkr Cloud Techs., LLC v. Cisco Sys., Inc.*,

2023 WL 4281746 (E.D. Tex. June 12, 2023), *report and recommendation adopted*, 2023 WL 4271524 (E.D. Tex. June 29, 2023) (denying motion to dismiss).[4]

None of the cases Defendant relies on supports a finding of patent ineligibility. For example, *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1379-80 (Fed. Cir. 2025) deals with claims "directed to reciting an equation that outputs a value to be used as the specific start position for decoding information in a cellular network," where "[t]he purported advancement of the [asserted] patent over the prior art is the use of the claimed equation." The '960 and '062 patents do not claim equations; they recite unconventional methods of performing operations that improve computer performance. Dkt. 1, ¶¶90-92. Similarly, *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1371 (Fed. Cir. 2024), is also inapposite because it involves "determining content to recommend based on user consumption history," which is nothing like the claims here. *Intellectual Ventures I LLC v. Symantec Corp.* deals with claims reciting a way of receiving and redistributing email messages that involved applying "business rules" to "control delivery" of the message—again, not analogous to the claims here. 838 F.3d 1307, 1318 (Fed. Cir. 2016). And in *Torus*, the claims contain "only [a] functional abstraction" of recursive encryption that describe a "desired result…in an abstract way," rather than a "'specific technical solution' by which the recursive encryption occurs." 2025 WL 1799327 at *4-5. In contrast to all, the claims here recite a specific technological solution that improves over then-existing processes.[5] *See* Dkt. 1, ¶¶90-92.

---

[4] To the extent Defendant argues its Motion does not raise claim construction issues, that requires reading the claims in an impermissibly broad way. *DigitalDoors, Inc. v. Cathay Bank*, 2025 WL 957210, at *2 (E.D. Tex. Mar. 10, 2025), *report and recommendation adopted*, 2025 WL 950545 (E.D. Tex. Mar. 28, 2025) (denying motion to dismiss).

[5] *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) (Mot. 12) and *In re Bd. of Trs. of Leland Stanford Junior Univ.*, 991 F.3d 1245, 1250-51 (Fed. Cir. 2021) (Mot. 12) are also inapposite. The *Digitech* claims recited "generating first data," "generating second data," and "combining said first and second data"—*i.e.*, "taking two data sets and combining them into a single data set"—whereas the claims here recite a technological process

Defendant's "pencil and paper" argument, which was made without any analysis or supporting evidence (Mot. 11, 12), also carries no weight because it altogether ignores the fact that the claims here present new and improved ways of conducting finite field operations that capture advancements in computing. *Ancora Techs. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018) (improvements "can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem").

**ii. *Alice* Step 2: The claims recite inventive concepts.**

Even if the Court were to find the claims abstract at *Alice* Step 1, they are nevertheless patent-eligible at Step 2 because they recite an inventive concept: the claim elements, in combination, amount to unconventional arrangements that embody improved computer functionality. *BASCOM*, 827 F.3d at 1350 ("[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."); *see Rapid Litig. Mgmt. v. CellzDirect*, 827 F.3d 1042, 1051 (Fed. Cir. 2016) (combination of individually well-known freezing and thawing steps was "far from routine and conventional" and thus eligible).

Plaintiffs' complaint alleges facts demonstrating that the '960 and '062 Patents' claims contain inventive concepts. Specifically, the claims recite improved computer-centric processes for performing finite field operations, *i.e.*, new ways for computers to carry out operations. Dkt. 1, ¶90 (citing '960 Pat., 1:66-3:30, 4:10-27). The patents teach combining performing "nonreducing" "wordsized" operations on elements represented as a predetermined number of "machine words" to obtain an "unreduced result" with a "specific" modular reduction of the unreduced result to

---

that improved over existing processes, yielding concrete benefits. *See* Dkt. 1, ¶¶90-92. The claims in *Stanford* were directed to "an enhancement to the abstract mathematical calculation of haplotype phase itself," not "an improvement to a technological process" that applies the math. Dkt. 1, ¶¶90-92. Also notable is the Federal Circuit's declination to address *Stanford's* Step 1 argument that its claims result in greater computational efficiency, finding the argument forfeited. 991 F.3d at 1251.

reduce it to that of a field element. *See*, *e.g.*, ’960 Pat., 4:10-26, 7:30-45, 8:26-60, 11:49-12:6, 15:66-16:7; Dkt. 1, ¶¶91-92. For example, the patents teach combining “wordsized suitable code” capable of operating on finite field elements, “as long as the elements are representable in no more than the given number of words” to produce “unreduced values.” ’960 Pat., 4:10-26. They further teach that a “[s]pecific reduction is then applied to the unreduced value, as is suitable for the specific finite field.” *Id*. These solutions provide technological benefits, such as “fast engines [that] can be produced for many specific finite fields, without duplicating the bulk of the engine instructions (program),” ’960 Pat., 4:10-26; Dkt. 1, ¶¶91-92, that allow “finite field elements [to] be consistently stored in registers of the same word length,” *id*. (citing ’960 Pat., 8:46-60), which requires fewer bit shifts and thereby reduces processing time and processor operations, *id*. (citing ’960 Pat., 3:26-30, 11:14-19, 11:34-40). Plaintiffs’ allegations are well-pled and must be taken as true. This “at a minimum raise factual disputes underlying the § 101 analysis.” *Aatrix*, 882 F.3d at 1126; *Cellspin,* 927 F.3d at 1317-18 (finding “specific, plausible factual allegations about why aspects of [] claimed inventions were not conventional” precludes § 101 dismissal).

Defendant does not engage with the question of whether the claims include unconventional arrangements of elements. It simply enumerates the claimed steps and summarily concludes that “[t]here is nothing in the claim other than the steps of the mathematical algorithm.” Mot. 16. Defendant’s reductionist view of the claims as being “purely mathematical in nature” also reinforces the need for claim construction, which would make clear that the recited elements involve inventive computational techniques, not “purely math.” *GREE Inc.*, 2020 WL 896771, at *4, 6, *report and recommendation adopted*, 2020 WL 887733 (E.D. Tex. Feb. 24, 2020).

Defendant’s cases at its *Alice* Step 2 analysis are also inapposite. The claims in *Torus*, which recite a “method for a recursive security protocol” that the Court summarized as the broad

concept of "multilevel encryption," 2025 WL 1799327, at *4, are unlike the claims in this case, which recite a specific improvement in how computers perform finite field operations. The claims in *First-Class Monitoring, LLC v. United Parcel Serv. of Am., Inc.*, which are directed to methods of "transmitting a data sequence via a personal communications system transmission protocol" that the Court summarized as "requesting, collecting, analyzing, and transmitting information." 389 F. Supp. 3d 456, 460-61, 466 (E.D. Tex. 2019), are nothing like the claims here. And unlike the claims in *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) and *PersonalWeb Technologies LLC v. Google LLC*, 8 F.4th 1310, 1319 (Fed. Cir. 2021), the claims here do not merely invoke generic computers to perform an otherwise abstract process, but rather recite new ways for computers to carry out operations. The different claims in Defendant's cases are "insufficient to overcome the well-pled facts" in Plaintiff's Complaint, and in any regard, "certainly do not establish that the ordered combinations of claim elements recited in the ['960 and '062 Patents] were well-understood, routine, or conventional at the time of filing." *Emerging Auto. LLC v. Kia Corp.*, 2025 WL 964031, at *3 (E.D. Tex. Mar. 31, 2025) (Gilstrap, J.); *see Cellspin*, 927 F.3d at 1318 ("[F]actual disputes about whether an aspect of the claims is inventive may preclude dismissal at the pleadings stage under § 101.").

**iii. Claim 3 of the '960 patent is not representative.**

Defendant contends "Claim 3 of the 960 Patent is exemplary" (Mot. 11) and that its analysis of that single claim applies to all other claims of the '960 and '062 Patents (Mot. 14-17). Defendant's argument is unavailing for at least two reasons. First, Defendant chiefly addresses limitations in *unasserted* claims 2, 4, and 5 of the '960 Patent and claim 15 of the '062 Patent.[6] *Id.*

[6] Defendant's Motion also addresses claims 1 and 7-9 of the '960 Patent and claims 5, 9-14, and 16-20 of the '062 Patent, none of which are asserted. The Court lacks jurisdiction to rule on these claims. *Miller Mendel, Inc. v. City of Anna*, 107 F.4th 1345, 1354-56 (Fed. Cir. 2024) (holding

Defendant does not address the other *asserted* claims (*i.e.*, claim 6 of the '960 Patent and claims 1-4 and 6-7 of the '062 Patent) nor does it justify treating claim 3 as representative of other asserted claims. This alone is enough to defeat Defendant's motion as to those other asserted claims. *GREE, Inc. v. Supercell Oy*, 2020 WL 475443, at *3 (E.D. Tex. Jan. 29, 2020) (Gilstrap, J.) (denying motion to dismiss where defendant failed to demonstrate representativeness); *PPS Data, LLC v. Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021, 1030 (E.D. Tex. 2019) (Gilstrap, J.) ("defendant must justify treating [a] subset [of claims] as representative of the other claims"). Defendant mentions asserted claim 6 of the '960 patent, but only cursorily, arguing that it "add[s] nothing other than further details of the mathematical formula.'" Mot. 15. Not so. Claim 6 recites the additional limitation, "said modular reduction is determined by said finite field," which particularizes *how* the modular reduction of claim 3, *i.e.*, the "specific modular reduction," is determined. The patent teaches combining a specific modular reduction with non-reducing wordsized operations yields more efficient programming and improved processing and storage, '960 Pat., 3:26-30, 4:10-26, 8:46-60, 11:14-19, 11:34–40, which are tangible improvements over the art, Dkt. 1, ¶¶91-92. This bolsters the conclusion that claim 6, like claim 3, is non-abstract.

Defendant also argues that the only difference between claim 1 of the '062 patent and claim 3 of the '960 patent is that claim 1 is performed by "a processor." Mot. 15. This is not true—the claims recite materially different limitations, including a "first set of instructions" that generates the unreduced result, and a "second set of instructions" for performing a "specific" modular reduction that generates the reduced result. These different sets of instructions (not present in claim 3) relate to *how* the invention combines operations to generate an "unreduced result" with

district court "did not have jurisdiction" over non-asserted claims). In any event, the non-asserted claims are patent eligible for at least the same reasons as claim 3.

operations for performing modular reduction for a "specific" finite field to generate an "unreduced result" in a computer. *See*, *e.g.*, '960 Pat., 4:10-26, 7:30-45, 8:26-60, 11:49-12:6, 15:66-16:7. As to claims 2-4 and 6-7 of the '062 patent, Defendant argues (without analysis) that claim 3 of the '960 patent is representative because the '062 patent claims only "add further details regarding the mathematical calculations performed." Mot. 15-16. The Court has rejected similar conclusory arguments where (as here) they are "not tethered to the language of the claims and thus fail[] to show the absence of legally relevant distinctions between the representative claim and the remaining asserted claims." *Tiare Tech., Inc. v. Whataburger Rests., LLC*, 2023 WL 2733348, at *2 (E.D. Tex. Mar. 15, 2023), *report and recommendation adopted*, 2023 WL 2716576 (E.D. Tex. Mar. 29, 2023). Defendant also mischaracterizes the claims. More than "details regarding mathematical calculations," dependent claims 2-4 and 6-7 specify non-abstract aspects of the claimed technological improvement. For example, claims 2 and 3 recite a specific input related to the second set of instructions, and claim 2 further specifies how the first set of instructions is obtained. Claim 4 relates to the number of machine words for representing finite field elements and the size of the memory segment used to execute the first set of instructions. Claim 6 relates to determining and initiating the cryptographic protocol, and claim 7 specifies an input related to that determination. In all events, claims 2-4 and 6-7 of the '062 Patent are patent-eligible for at least the same reasons as claim 3 of the '960 Patent.

### B. The '827 and '370 Patents Claim Eligible Subject Matter.

#### i. *Alice* Step 1: '827 and '370 patent claims are directed to specific improvements in digital signature verification.

The '827 and '370 patents teach specific improvements over conventional means of verifying ECDSA digital signatures, specifically, improvements that "can save on bandwidth and storage" and "yield[] reduced verification times." '827 Pat., 15:53-56; Dkt. 1., ¶¶72-75; *see also id.*

¶63 (citing ’827 Pat., at *e.g.*, 1:12-13, 4:15-33, 15:27-40).[7] Computer networks have unique security concerns relating to digital message authenticity which require specialized digital signature techniques. *Id*., ¶64 (citing ’827 Pat., at 1:18-48, 2:17-3:17). Digital signatures are generated using public key cryptography, a technology that addresses such security problems. Dkt. 1, ¶¶65-66. One known digital signature technique is the Elliptic Curve Digital Signature Algorithm (ECDSA), which has one process for generating signatures and another for verifying them. *Id*., ¶¶67-71. At the time of the invention, the inventors recognized that ECDSA signature *verification* took twice as long as signature *generation* because verification involved performing two (rather than one) scalar multiplications (*i.e.*, uG and vQ), whose operations consumed large amounts of computer processing time.[8] *Id*., ¶72 (citing ’827 pat., at 3:5-17); *see also* ’827 pat., 4:16-27. This was a technological problem for which the inventors discovered and claimed technological solutions. *Id.*, ¶73 (citing ’827 pat., at 3:18-4:14); *see also* ’827 pat., 4:16-27. Some prior acceleration techniques involved precomputing certain values, but at the cost of more memory and, in some cases, more processing cycles. Dkt. 1, ¶73 (citing ’827 pat. at 3:18-4:14). Because costs to time, memory, and bandwidth varied tremendously between implementations and systems, case-by-case optimizations were required to balance such costs with potential speed increases. *Id*. The inventors recognized that ECDSA signature verification was “slow,” so they invented ways to improve the process to make it faster. ’827 pat., 4:16-27.

---

[7] The ’827 and ’370 patents share a common specification; only the ’827 patent is cited herein.

[8] Verifying an ECDSA digital signature requires computing “an integer e=h(M) mod n from the received message,” as well as “integers u and v such that u=e/mod n and v=r/s mod n,” and “a value corresponding to the point R that is obtained by adding uG+vQ” and that has “co-ordinates (x, y).” The verifier “converts the field element x to an integer x’ and checks that r=x’ mod n. If it does[,] the signature is verified.” ’827 pat., 2:64-3:4.

The patents teach a new process for verifying ECDSA signatures that is faster and more efficient than conventional methods were at the time. *Id.*, ¶74 (citing ’827 pat., 15:15-40). In particular, the patents teach that in traditional ECDSA processes, a sending device sends an electronic message with a digital signature and the public key to the receiving device. ’827 pat., 15:15-26. Or, if the sending device did not send the public key along with the message, the receiving device would look up the public key in a database via a network. *Id.* The patents teach that “it would be beneficial to be able to recover the public key Q from the signature” itself. *Id.* The solution provided a faster, more efficient way of verifying digital signatures that allowed the public key to be recovered from the signature instead of being provided with the message or retrieved elsewhere. *Id.* at 15:27-40. This inventive signature verification process is captured in claim 1 of the ’827 patent[9]:

1. A computer implemented method comprising:

   [a] receiving, from a signer, a signature on a message M, wherein the signature includes a first signature component r and a second signature component s;

   [b] **obtaining an elliptic curve point associated with the first signature component r**; and

   [c] **generating**, by operation of a cryptographic module comprising one or more processors, **a public key of the signer based on the elliptic curve point and a hash value e computed from the message M**;

   [d] **wherein the elliptic curve point comprises a first elliptic curve point R**, the public key of the signer comprises a second elliptic curve point Q, **generating the public key of the signer comprises computing $Q=r^{-1}(sR-eG)$**, and G comprises a generator of an elliptic curve group that includes the first elliptic curve point R and the second elliptic curve point Q.

This claim departs from the then-typical ECDSA signature verification process, where the value for Q had to be included with the message or retrieved elsewhere, for the process to recover R. *Cf.* ’827 pat.

[9] Claim 1 is the only asserted independent claim of the ’827 Patent. Defendant treats claim 1 as representative of all other claims of the ’827 and ’370 patents (Mot. 21, 22-23) but as explained below, claim 1 is not representative. *See infra* § IV.B.iii.

2:64-3:4, 15:27-40. Here, R is based on r, where the public key is *generated* using R and the signature components (r, s) by computing $Q=r^{-1}(sR-eG)$. *Id.*, cl.1, 15:27-56. The patent teaches that not sending the public key to the verifier "can save on bandwidth and storage" and "yields reduced verification times." *Id.* 15:53-56.[10] Claim 1 therefore recites a concrete and non-conventional way to achieve a tangible improvement over prior ways of verifying digital signatures generated using ECDSA.

The patents' improved verification process is also apparent in claim 1 of the '370 Patent. For example, the claims specifies "the electronic message omits a public key of a signer," which differentiates it from prior verification processes that relied on the public key being sent with the message. *See* '827 pat., 15:20-21. It also requires "receiving … an elliptic curve point R" that is "associated with … a first signature component r," and "recovering … the omitted public key of the signer based on the received first elliptic curve point and the received signature," "wherein recovering the omitted public key of the signer comprises computing $Q=r^{-1}(sR-eG)$," and "verifying … the received signature using the recovered public key which provides an accelerated verification of the received signature,"[11] all of which differentiate the invention from prior ECDSA verification processes. *See* '827 pat., 2:64-3:4, 15:15-56. Thus, claim 1 of the '370 Patent also recites a concrete and non-conventional way to achieve a tangible improvement over prior ways of verifying digital signatures.

*Enfish* is again instructive. 822 F.3d 1327. It reminds that under *Alice*, a claim that improves over a conventional technological process (as it does here) is not abstract. *Id.* at 1335. Patent eligibility

[10] In contrast to *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020) and *PersonalWeb*, 8 F.4th at 1319, these savings of bandwidth, storage, and signature verification times are not the result of mere computer implementation, but rather are the result of performing the improved process of the claims instead of the conventional process.

[11] Defendant argues that "the claims do not specific any improved speed or efficiency." Mot. 21. As explained above, however, the improvements that give rise to those benefits *are* recited in the claims. Defendant also ignores that claim 1 of the '370 patent expressly recites "accelerated verification." This factual dispute precludes dismissal. *See GREE*, 2020 WL 896771, at *6.

is further bolstered where (like here) the improvements achieve tangible benefits, such as "sav[ing] on bandwidth and storage" and "reduc[ing] verification times" ('827 pat. 15:53-56). *Id.* at 1337; *see also Aatrix*, 882 F.3d at 1127-28. This Court has also found patents relating to cryptography non-abstract. For example, in *TQP Dev., LLC v. Intuit Inc.*, 2014 WL 651935, at *5, 7 (E.D. Tex. Feb. 19, 2014), the defendant argued that a method of using "pseudo-random key[s]" to encrypt and decrypt data was directed to "an algorithm, a mental process, or an abstract idea." 2014 WL 651935, at *2. The Court disagreed, noting that "the concept at the heart of the invention … [is] specific to a particular technological field—that of data encryption." *Id.* at *3. It further held that "[b]ecause the claim is drawn to a very specific method of changing encryption keys, it contains an 'inventive concept,' and is a far cry from something that could fairly be characterized as a 'basic tool of scientific and technological work.'" *Id.* at *4 (cleaned up) (citations omitted). The claims of the '827 and '370 patents are similarly directed to specific, patent-eligible methods of verifying digital signatures.

Defendant's argument that the claims are directed to "a mathematic formula" that can be "performed by humans" (Mot. 19) oversimplifies them in a way that "virtually guarantee[s]" their abstractness. *Trinity Info*, 72, F.4th at 1361; *Powerblock*, 2025 WL 2301853 at *5 (cautioning courts to '"avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims") (quoting *McRO*, 837 F.3d at 1313). The Federal Circuit has repeatedly held that claims *involving* math are not per se abstract. *Thales*, 850 F.3d at 1349. And where, as here, the claims describe a specific method, they are "a non-abstract improvement in an existing technological process." *Koninklijke KPN*, 942 F.3d at 1150-51. Moreover, elliptic curve digital signature algorithms are computer-centric technology, Dkt. 1, ¶64-66; '827 pat., 1 at 1:18-48, and "[can] not conceivably be performed in the human mind or with pencil and paper," *TQP*, 2014 WL 651935, at *4. Regardless, Defendant's "[can be] performed by a human" argument raises

factual questions precluding dismissal. *Cryptopeak*, 2016 WL 7198705 at *6 (whether "an algorithm [ ] can be performed mentally, or readily with pencil and paper, is [a] factual question").

Defendant also ignores claim terminology that, properly construed, make clear the claims are directed to improvements in computer operations and describe "unconventional technological solution[s]." *Cryptopeak Sols.*, 2016 WL 7198705 at *6; *Amdocs*, 841 F.3d at 1300. The claims detail recovering a public key using parts of a "signature" on a "message," *i.e.*, a "digital signature" generated using cryptographic operations performed by a computer on a "message" between computers that can be digitally signed. *See*, *e.g.*, '827 pat., 1:40-48, 2:17-3:9, 6:23-67, 12:11-47, 15:15-66. The claims specify certain information included with a message and how to process it in a new way to recover the public key. *Id*. at 15:15-40. Defendant's argument that the claims are directed to "a mathematical formula" ignores the technological character and role of the claims' terms. These terms also do not describe mere "generic computer-implemented steps" (Mot. 19) but rather a new and improved "computer-centric technology," *Commc'n Interface Techs., LLC v. Albertson's LLC*, 2021 WL 4453580, at *8 (E.D. Tex. Sept. 29, 2021) (citing *Enfish,* 822 F.3d at 1335), that is "a technical improvement over [the] prior art," *BASCOM*, 827 F.3d at 1350.

Defendant's analogy to *Parker v. Flook*, 437 U.S. 584 (1978) is inapt. Mot. 20. *Flook* described a process for updating an alarm limit consisting of: measuring the present value of a process variable; using an algorithm to calculate an updated alarm-limit value; and adjusting the alarm limit to the updated value. *Id*. at 585. The only difference between conventional methods and the claims was the mathematical formula in the second step. *Id*. The court found the claims did not pass "the proper analysis" because "[t]he process itself, not merely the mathematical algorithm, must be new and useful." *Id*. at 591. The claims were patent ineligible not because they contained a mathematical algorithm, but because other than the new algorithm, the claimed process

was conventional. *Id.* at 585-86, 594. Here, the claims recite a new, unconventional verification process where the public key is recovered from the signature that applies a mathematical formula as a component. As the Court in *Flook* confirmed, such claims are patent-eligible. *Id.* at 594 ("Even though a phenomenon of nature or mathematical formula may be well known, an inventive application of the principle may be patented.").

The claims here are properly analogized to those in *Diamond v. Diehr*, 450 U.S. 175 (1981), which claimed a new process for curing rubber that involved the use of a mathematical algorithm (*i.e.*, the Arrhenius equation). *Id.* at 177-78, 188. The Court held the claims did "not seek to patent [the] mathematical formula" or "pre-empt the use of that equation." *Id.* at 176. "Rather, they seek only to foreclose from others the use of that equation in conjunction with all of the other steps in their claimed process." *Id.* at 187. "In terms of the modern day *Alice* test, the *Diehr* claims were directed to an improvement in the rubber curing process, not a mathematical formula." *Thales*, 850 F.3d at 1348 (analyzing *Diehr*, 450 U.S. at 192). The *Diehr* Court instructed that in determining patent eligibility, "claims must be considered as a whole," and "[i]t is inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the analysis." *Diehr*, 450 U.S. at 188. Accordingly, claims are patent eligible under § 101 "when a claim containing a mathematical formula implements or applies that formula in a … process which, when considered as a whole, is performing a function which the patent laws were designed to protect." *Id.* at 192. Likewise, the claims here are directed to a new and improved digital signature verification process, not a mathematical formula, that employs $Q=r^{-1}(sR-eG)$ in the new process. The patent laws are indeed designed to protect such cryptographic methods. *See*, *e.g.*, *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 846 n.7 (E.D. Tex. 2014) (Bryson, J.).

#### ii. *Alice* Step 2: The claims recite inventive concepts.

Were the Court to find claim 1 abstract at *Alice* Step 1, a review of the claim under Step 2 demonstrates that it covers a patent-eligible inventive concept because it recites inventive steps that, in combination, amount to an unconventional arrangement of elements that result in a tangible improvement over the prior art. As the specification explains, and as Plaintiffs' Complaint alleges, the improvement of the '827 and '370 Patents was a new technique for verifying ECDSA signatures that is faster and more efficient than the conventional means. *Id*., ¶74 (citing '827 pat., 15:15-40). Verification techniques at the time required the verifier to be provided with the public key Q in the message or from a database. '827 pat., 15:15-26. Either way, the public key had to be included in a message, and the verifier had to recover the point R using the provided Q to complete verification. *Id.*, 2:64-3:4. In contrast, the patents teach that "it would be beneficial" to "recover the public key Q *from the signature*" rather than provide it in a message. *Id*., 15:15-40(emphasis added). This new and improved technique involves first recovering point R, and then recovering Q *from the signature* (r, s) using R and other information. *Id*. This is a departure from the typical ECDSA verification because R is recovered first (and not by using Q, because it wasn't sent), and the public key Q is generated using R and the signature components (r, s) by computing $Q=r^{-1}(sR-eG)$. *Id*., 5:27-56.[12] This new process "can save on bandwidth and storage and the verification process described above yields reduced verification times." *Id*., 15:53-56. Defendant addresses none of these issues or teachings of the patents, and merely intones that the claims contain nothing more than steps of a mathematical algorithm. Mot. 22. That argument is incorrect for all the reasons explained above.

[12] This new verification process contains a non-abstract inventive concept that improves over conventional verification processes, unlike the abstract improvements in *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018) ("improved mathematical analysis") and *PersonalWeb*, 8 F.4th at 1318-19 (improved use of "content-based identifiers"). And, unlike the claims in *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 79 (2012), the claims here are not a mere instruction to apply a natural law using conventional techniques.

Defendant's citation to *Gottschalk v. Benson*, 409 U.S. 63, 72 (1972) (Mot. 22) is unavailing because the claims in that case are not analogous. As Judge Bryson (sitting by designation) explained in *TQP*, "the application [in *Benson*] claimed … a simple conversion from one number to another equivalent number in a different form. Thus, the invention was as basic as the conversion of Roman numerals into Arabic numerals." *TQP*, 2014 WL 651935, at *4 (quoting *Benson*, 409 U.S. at 68) ("[T]he extraordinary breadth of the claim, which it characterized as 'so abstract and sweeping as to cover both known and unknown uses of the [binary-coded decimal] to pure binary conversion.'"). In contrast, the '827 and '370 patent claims recite new and improved processes for verifying digital signatures whose steps, in combination, amount to an unconventional arrangement of elements that result in a tangible improvement over the prior art.[13]

**iii. Claim 1 of the '827 patent is not representative.**

Defendant contends that claim 1 of the '827 patent is representative of—and that its analysis of that single claim applies to—all other claims of the 827 and '370 patents. Mot. 21-22, 23-25. This does not pass muster.[14] Claim 1 of the '370 patent specifies that the message is an "electronic message" that "omits a public key of the signer," and additionally recites "verifying … the received signature using the recovered public key which provides an accelerated verification of the received signature." These features, which Defendant ignore, demonstrate the non-abstractness and unconventional nature of the '370 Patent's claims. Defendant has not justified overlooking them. *PPS Data*, 404 F. Supp. at 1030.

[13] Similar reasoning distinguishes the claims in this case from those in *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) and *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310 (Fed. Cir. 2021). Mot. 22.

[14] Defendant also addresses unasserted claims 6-13 of the '827 Patent and claims 6-11 of the '370 Patent. The Court lacks jurisdiction to rule on these claims. *Miller Mendel*, 107 F.4th at 1354-56. In any event, they are patent eligible for at least the same reasons as claim 1 of the '827 Patent.

Regarding dependent claims 2-5 of both patents, Defendant lists elements from those claims and then summarily concludes, without any support, that they "are merely further details in the algorithm and/or are not new features." Mot. 22, 25. Defendant's conclusory analysis is insufficient. *Tiare Tech.*, 2023 WL 2733348, at *2. To the contrary, the details of each dependent claim further demonstrate that the claimed invention is a technological process of verifying a digital signature (claims 3-5) and authenticating a signed message (claim 2). Defendant offers no support for its assertion, let alone clear and convincing evidence, that clams 2-5 are not inventive (*i.e.*, do not contain "new features").

**C. The '286 Patent Claims Eligible Subject Matter.**

**i. *Alice* Step 1:'286 patent claims are directed to specific improvements in how computers perform modular reduction operations.**

Claim 1 of the '286 Patent claims an unconventional way of performing Montgomery-style reduction that reduces computational and storage requirements. Dkt. 1, ¶96 (citing '286 Pat., 1:13-16, Abstract). The patent teaches that "[i]n … public key cryptography, … modular arithmetic is used to operate on the integers." *Id.* ¶97 (citing '286 Pat., 1:20–30). In modular arithmetic, performing an operation "modulo n" (or "mod n") means taking the answer of an operation (e.g., multiplying two numbers) to be the remainder of the result of the operation divided by a number "n" (called the "modulus").'286 Pat., 1:20-64 One reduction technique, known as "Montgomery" reduction, involves programming computers to repeatedly cancel and shift on values in multiple machine words stored in computer registers (memory). Dkt. 1 ¶¶98-102 (citing '286 Pat., 1:20-30, 1:47-2:61). The inventors noted this conventional way of running Montgomery reductions was "slow," *id.*, and that their new technique improves over the old one by reducing computational time. *Id.*, ¶103 (citing '286 Pat., 3:21-45, 5:28-36, 3:40-45, 5:24-35, 5:45-6:19, 6:51-65).

The '286 patent's techniques for performing a Montgomery-style reduction includes computing a modified operand using a reduction value (instead of a modulus used in a standard Montgomery reduction) to perform a replacement of a least significant word of the operand, rather than a cancellation thereof, where the reduction value is a function of the modulus. *Id.*, ¶104 (citing '286 Pat., 4:40–6:65). One such method is recited in claim 10:

> 1. A method for performing, on a cryptographic apparatus, a **Montgomery-style reduction** in a cryptographic operation, the method comprising:
>
> [a] obtaining an operand for the cryptographic operation;
>
> [b] **computing a modified operand using a reduction value, instead of a modulus used in performing a standard Montgomery reduction, to perform a replacement of a least significant word of the operand, rather than perform a cancellation thereof, the reduction value being a function of the modulus**; and
>
> [c] outputting the modified operand.

These limitations together recite a non-conventional process describing *how* a computer performs a new kind of Montgomery-style reduction. Indeed, claim 1 expressly distinguishes this new process from the "standard Montgomery reduction," which shows it to be an improvement over existing processes. *Koninklijke KPN*, 942 F.3d at 1150-51. The improvement embodied by the claims as a whole is non-abstract. The patent teaches that it can reduce the number of computations and registers needed by the computer to effect the modular reduction. Dkt. 1, ¶104 (citing '286 Pat., 3:40-42, 5:28-36, 6:2-19). For instance, the patent teaches that improved computer performance was achieved using such techniques to perform ECC operations with resource-constrained computer processor architectures (*e.g.*, "the popular ARM architecture"). *Id.* at 6:51-65. These are technological improvements. *Enfish*, 822 F.3d at 1337 (benefits over conventional techniques, including "faster" operations and "smaller memory requirements," support non-abstractness).

Defendant's argument that claim 1 is abstract relies on its oversimplification of the claim from a specific computational technique to the mere use of a "mathematical algorithm (formula)." Mot. 25.

Defendant's characterization violates the "crucial" requirement to accurately describe "what the claims require and [ ] what the patent asserts to be the claimed advance." *See TecSec,* 978 F.3d at 1294. A claim having a mathematical component is "not doom[ed] . . . to abstraction," *Thales*, 850 F.3d at 1349, but "as part of the greater whole," it may contribute to a non-abstract invention, *Uniloc USA*, 2018 WL 4927279, at *4. Defendant's arguments ignore the claim's *combined* elements that together make up a specific method for achieving the desired improvement in *how* computers perform Montgomery-style reduction operations. *Internet Pats.*, 790 F.3d at 1346.

To advance its argument that claim 1 is abstract, Defendant recasts the claimed technological solution as merely improved math and argues that "reducing the number of multiplications and registers previously needed" yields only "a more efficient Montgomery reduction" or "improvement in computational accuracy." Mot. 26-27. This is incorrect for multiple reasons. First, Defendant's argument rests on the assumption that reducing computations (faster processing) and needing fewer registers (using less memory) is improved math rather than a technological improvement. But whether these improvements are technological or mathematical is a factual dispute that precludes dismissal. *See Aatrix*, 882 F.3d at 1127-28. The well-pled facts in Plaintiff's complaint and the patent's specification indicate that these improvements are technological and enhance computer performance by decreasing memory usage and processor utilization. Dkt. 1, ¶¶101-104; '286 pat., 3:40-42, 5:28-36, 6:2-19, 6:51-65; *Aatrix*, 882 F.3d at 1127-28 (allegations of increased computer efficiency, including using less memory and faster processing, suggest non-abstractness); *Enfish*, 822 F.3d at 1337 ("faster" operations and "smaller memory requirements" support non-abstractness).

Second, Defendant ignores terminology that, properly construed, bear on the character of the claims. The '286 patent describes a technological solution for efficiently computing a

Montgomery-style reduction to "reduce the number of operations … and [] maximize the number of components that can be kept in [memory] registers, reducing the loading and storing of temporary values." '286 pat., 2:59-61, 3:20-26. For example, the claims include "perform[ing] a replacement of a least significant word of the operand, rather than perform a cancellation thereof." *Id*., cl. 1. The "least significant word" relates to the location of word in a multi-word representation, and a "word" relates to the unit of data that a computer is capable of retrieving from memory and processing in a given operation. *See*, *e.g.*, '286 pat., 1:41-46, 2:21-23, 2:38-43, 3:20-26, 4:59-64-5:17, 5:35-44. Defendant's argument that the claims are directed simply to using a mathematical algorithm ignores the meaning of these terms, which are parts of a "technological solution." *Amdocs*, 841 F.3d at 1300. Claim construction is necessary to clarify what the claims are directed to, particularly in light of Defendant's incorrect allegation that the claims are directed only to "math."[15] *See Cryptopeak*, 2016 WL 7198705 at *6; *see also GREE*, 2020 WL 896771 at *6.

**ii. *Alice* Step 2: The claims recite inventive concepts.**

The '286 Patent claims are also patent-eligible at *Alice* Step 2 because they recite an inventive concept: a non-traditional way to perform Montgomery-style operations that improves computer functionality. As Plaintiffs' Complaint alleges, the patent teaches techniques for performing a Montgomery-style reduction that includes computing a modified operand using a reduction value, instead of the modulus used in standard Montgomery reductions, to perform a replacement of a least significant word of the operand, rather than perform a cancellation thereof, where the reduction value is a function of the modulus. Dkt. 1, ¶104 (citing '286 Pat., 4:40–6:65).

---

[15] Defendant's reliance on the specification to determine the meaning of terms in claim 5 (Mot. 28 n.12) contradicts its argument that claim construction is not necessary. *Jawbone Innovations, LLC v. Panasonic Holdings Corp.*, 2024 WL 1298355, at *2 (E.D. Tex. Mar. 7, 2024), *report and recommendation adopted*, 2024 WL 1289450 (E.D. Tex. Mar. 26, 2024).

By its nature, this new method is different from, and an improvement over, how computers conventionally performed "standard Montgomery reductions." This improvement is embodied by the claims as a whole—reducing the number of computations (processing resources) and registers (memory) needed to perform modular reduction operations—and results from the unconventional arrangement of steps claimed. Dkt. 1, ¶104 (citing '286 Pat., 3:40-42, 5:28-36, 6:2-19).

Defendant does not attempt to show that the method of claim 1, as a whole, was well-known, routine, or conventional. Instead, it recycles its argument from *Alice* Step 1 that the claims only recite improved math. Mot. 28-29. For all the reasons explained above with respect to *Alice* Step 1, that argument is incorrect, reinforces the need for claim construction (due to Defendant's incorrect interpretation of the claims as encompassing only math)[16], and creates disputes of fact that preclude dismissal. Moreover, allegations in Plaintiff's complaint that indicate the claimed invention was not well-understood, routine, or conventional must be accepted as true at this stage and "prevent resolving the eligibility question as a matter of law." *GREE*, 2020 WL 896771 at *6 (citing *MyMail*, 934 F.3d at 1379 (citing *Aatrix*, 882, F.3d at 1125)). For instance, as pled, the patent teaches the invention reduces the number of computations and registers needed to effect the modular reduction, Dkt. 1, ¶104 (citing '286 Pat., 3:40-42, 5:28-36, 6:2-19), and that improved computer performance was achieved using such techniques to perform ECC operations with resource-constrained computer processor architectures (*e.g.*, "the popular ARM architecture"), *id.* (citing '286 pat., 6:51-65). These are technological improvements evidencing an inventive

[16] *See also Quest NetTech Corp. v. Apple, Inc.*, 2020 WL 13538609 (E.D. Tex. Feb. 18, 2020) (denying motion to dismiss where parties disputed whether claim construction is needed to capture inventive concept); *Wetro Lan LLC v. Phoenix Contact USA Inc.*, 2016 WL 1228746, at *4 (E.D. Tex. Mar. 29, 2016) ("The Court agrees with Wetro that construing these terms will assist the Court in determining whether the claim are direct to improvements in computer technology").

concept. *Aatrix*, 882 F.3d at 1127-28 (improved efficiency, using less memory, and faster processing); *see Enfish*, 822 F.3d at 1337 ("faster" operations and "smaller memory requirements").

Defendant's argument with respect to *Stanford I* is inapposite. To draw the comparison, Defendant collapses claim 1 into nothing more than "modifying data with the mathematical algorithm," which mischaracterizes and grossly oversimplifies the claim, including by giving no weight to any of its terms. *Zilkr Cloud Techs.*, 2023 WL 4281746, at *2 (denying motion to dismiss where defendant collapsed claims into a broad concept, implicating claim construction).

**iii. Claim 1 of the '286 patent is not representative.**

Defendant contends that "[c]laim 1 is representative of the remaining claims, Mot. 27, arguing they "do not add any inventive concepts," *id*. at 29. Defendant's arguments are again insufficient. First, Defendant chiefly addresses *unasserted* claims 2-4, 7-8, and 10-25.[17] Second, as to claims 5-6 and 9, Defendant lists certain details in those claims and then summarily concludes that they "do not make the claims any less abstract" or "add any inventive concepts," Mot. 27-29. Defendant's conclusory analysis is insufficient. *Tiare Tech.,* 2023 WL 2733348, at *2. To the contrary, the additional details of those claims reinforce the non-abstract nature of the claims as a whole. For example, the "Montgomery engine" of claim 5 demonstrates the claims are not directed to new math, but a new calculator process (a new computer process). Claim 6's requirements that "the reduction value is pre-computed and stored with one or more crypto graphic system parameters prior to the computing" relates to how the computer proceeds to operate (not mere math). And claim 9's further specification of the cryptographic operation emphasizes that the invention is a practical application in the cryptographic arts.

## V. CONCLUSION

Defendant's Motion should be denied in its entirety for the reasons set forth above.

[17] The Court lacks jurisdiction to rule on these claims. *Miller Mendel*, 107 F.4th at 1354-56. In any event, they are patent eligible for at least the same reasons as claim 1.

Dated: August 13, 2025

Respectfully submitted,

*/s/ Philip J. Eklem*
Philip J. Eklem – LEAD ATTORNEY
**REICHMAN JORGENSEN LEHMAN & FELDBERG LLP**
1909 K Street NW, Suite 800
Washington DC, 20006
Tel: (202) 894-7310
peklem@reichmanjorgensen.com

Khue V. Hoang
**REICHMAN JORGENSEN LEHMAN & FELDBERG LLP**
400 Madison Avenue, Suite 14D
New York, NY 10017
Tel: (212) 381-1965
khoang@reichmanjorgensen.com

Matthew G. Berkowitz
**REICHMAN JORGENSEN LEHMAN & FELDBERG LLP**
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
mberkowitz@reichmanjorgensen.com

*Of Counsel*:

Andrea L. Fair
Texas Bar No. 24078488
Claire Abernathy Henry
Texas State Bar No. 24053063
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy.
Longview, TX 75604
Tel: (903) 757-6400
andrea@millerfairhenry.com
claire@millerfairhenry.com

*Attorneys for Plaintiffs Malikie Innovations, Ltd. and Key Patent Innovations, Ltd.*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that the foregoing document was filed electronically on August 13, 2025 pursuant to Local Rule CV-5(a) and has been served on all counsel who have consented to electronic service

*<u>/s/ Claire Abernathy Henry</u>*
Claire Abernathy Henry