**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| Malikie Innovations Ltd. and<br>Key Patent Innovations Ltd.,<br><br>Plaintiffs,<br><br>v.<br><br>Core Scientific, Inc.<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:25-CV-519-JRG-RSP<br><br>JURY TRIAL DEMANDED |

# PLAINTIFFS MALIKIE INNOVATIONS LTD. AND KEY PATENT INNOVATIONS LTD.'S SUR-REPLY TO DEFENDANT CORE SCIENTIFIC, INC.'S MOTION TO DISMISS

# TABLE OF CONTENTS

**I. THE ’960 AND ’062 PATENTS CLAIM ELIGIBLE SUBJECT MATTER ..... 1**

**II. THE ’827 AND ’370 PATENTS CLAIM ELIGIBLE SUBJECT MATTER. ... 6**

**III. THE ’286 PATENT CLAIMS ELIGIBLE SUBJECT MATTER. ...................... 8**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018)....................4, 6, 9

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)....................5, 8, 10

*Data Engine Techs. LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018)....................4

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014)....................7

*Diamond v. Diehr*,
450 U.S. 175 (1981)....................7

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014)....................7

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)....................4, 6, 8, 10

*GREE Inc. v. Supercell OY*,
2020 WL 896771 (E.D. Tex. Jan. 21, 2020)....................9

*In re Bd. of Trs. of the Leland Stanford Junior Univ.*,
989 F.3d 1367 (Fed. Cir. 2021)....................3, 7

*Infernal Tech., LLC v. Sony Interactive Ent. LLC*,
No. 2:19-CV-00248-JRG, 2021 WL 5804262 (E.D. Tex. Dec. 7, 2021)....................4, 5, 8

*Intellectual Ventures I LLC v. Cap. One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015)....................5, 7

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016)....................passim

*Optis Cellular Tech. LLC v. Apple Inc.*,
139 F.4th 1363 (Fed Cir. 2025)....................7

*Parker v. Flook*,
437 U.S. 584 (1978)....................3, 7

*PersonalWeb Techs. LLC v. Google LLC*,
8 F.4th 1310 (Fed. Cir. 2021)....................7

*PowerBlock Holdings, Inc. v. iFit, Inc.*,
No. 2024-1177, 2025 WL 2301853 (Fed. Cir. Aug. 11, 2025)....................1, 6

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017)....................7

*Synopsys, Inc. v. Mentor Graphics Corp.*,
839 F.3d 1138 (Fed. Cir. 2016)....................7

*Thales Visionix Inc. v. United States*,
850 F.3d 1343 (Fed. Cir. 2017)....................5

*TQP Dev., LLC v. Intuit Inc.*,
2014 WL 651935 (E.D. Tex. Feb. 19, 2014)....................7, 8

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th 1355 (Fed. Cir. 2023) .......... 2, 6, 9
*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
957 F.3d 1303 (Fed. Cir. 2020).......... 9
*Univ. of Fla. Research Found., Inc. v. GE Co.*,
916 F.3d 1363 (Fed. Cir. 2019).......... 6
*US Synthetic Corp. v. Int'l Trade Comm'n*,
128 F.4th 1272 (Fed. Cir. 2025) .......... 10

At *Alice* Step 1, Defendant oversimplifies each claim to the point of inevitable abstraction by ignoring their specific requirements—an approach the law expressly forbids. Only by oversimplifying the claims in this way is Defendant able to contend that the claims recite nothing more than mathematical algorithms. However, review of the claims as a whole, in light of the specification, and with respect to the claimed advance over the prior art—in other words, a *proper* analysis—readily shows that each claim is directed to a specific solution that improves over prior technological processes, and is not merely abstract math. Defendant's reductionist approach ignores Plaintiffs' arguments and well-pled allegations of non-abstractness.

Defendant's oversimplification of the claims as "mathematical algorithms" also dooms its *Alice* Step 2 analysis. At Step 2, Defendant (incorrectly) argues that because the claims recite only mathematical algorithms, there can be no patent-eligible inventive concept anywhere in the claim. But Defendant's argument effectively sidesteps the inventive concept inquiry by ignoring the individual elements and their ordered combination (*i.e.*, the actual words of the claims), as well as what the patent's specification says about them.

In all events, Defendant fails to overcome Plaintiffs' arguments and well-pled factual allegations of non-abstractness and inventiveness.

## I. The '960 and '062 Patents Claim Eligible Subject Matter

Defendant's argument that claim 3 of the '960 Patent[1] is directed to a mathematical algorithm takes the impermissible reductionist approach that the Federal Circuit has repeatedly warned against. *PowerBlock Holdings, Inc. v. iFit, Inc.*, No. 2024-1177, 2025 WL 2301853, at *5 (Fed. Cir. Aug. 11, 2025) ("[W]e have cautioned that courts must be careful to avoid

[1] Defendant again argues that claim 3 of the '960 Patent is representative of the asserted claims of the '960 and '062 Patents. Reply 2. Defendant's conclusory arguments are similar to those in its opening brief, which Plaintiffs already rebutted. Opp. 14-16.

oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." (cleaned up)); *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361 (Fed. Cir. 2023) (courts must not "describ[e] the claims at such a high level of abstraction and untethered from the language of the claims that the claims would be virtually guaranteed to be abstract" (cleaned up)). To argue that the claim is directed to a "mathematical algorithm," Defendant guts the claim of all salient details and reduces it to a mere shell of itself: taking an "input," performing "mathematical operations" on the input to obtain "results," and using the results in another operation. Reply 2. Defendant's approach is forbidden. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) ("Whether at step one or step two of the *Alice* test, in determining the patentability of a method, a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps."). Defendant impermissibly ignores the claim's specific requirements for each step, including "representing each element as a predetermined number of machine words," "performing a non-reducing wordsized operation on said representations," "completing said non-reducing wordsized operation for each word of said representations to obtain an unreduced result," and "upon performing a specific modular reduction of said unreduced result to reduce said unreduced result to that of a field element of said finite field to obtain a reduced result." '960 Pat., cl. 3. These details (all of which Defendant skips over) contribute to the claimed advance over prior techniques of programming computers to perform finite field operations, Opp. 4-7, and cannot be ignored, *Trinity*, 72 F.4th at 1361 ("To determine whether a claim is 'directed to' a patent ineligible concept, we evaluate '***the focus of the claimed advance over the prior art*** to determine if the claim's character ***as a whole*** is directed to excluded subject matter." (emphasis added).

When the details above are properly considered, Defendant's argument that there is no

"material difference" between claim 3 and those in *Parker v. Flook* and *Stanford I* falls apart. In *Flook*, the Supreme Court held that for a process involving a mathematical algorithm to be patent-eligible, "[t]he process itself, not merely the mathematical algorithm, must be new and useful." *Parker v. Flook*, 437 U.S. 584, 590-91 (1978). The claims in *Flook* were ineligible—not because they involved math, *id*. at 590 ("a process is not unpatentable simply because it contains … a mathematical algorithm")—but because the claimed process itself was entirely conventional, aside from the new mathematical formula used to calculate the alarm limit, *id*. at 585-86 ("The only difference between the conventional methods of changing alarm limits and that described in respondent's application rests in the second step -- the mathematical algorithm or formula."), 588, 590, 594. Here, claim 3 does not recite a new mathematical formula used in an otherwise conventional process. To the contrary, claim 3 is directed to a new and useful process itself: an unconventional process of *computer processing* that improves over prior techniques.[2] Opp. 4-7. Defendant does not dispute that claim 3 recites a computer process. Reply 4 n.3. But Defendant never shows (because it cannot) that the steps of claim 3—considered "as an ordered combination, without ignoring the requirements of the individual steps," *McRO*, 837 F.3d at 1313—is a conventional process.

In *Stanford I*, the claims required "receiving" data and "determining" mathematical results based on the received data using "conventional" mathematical operations. *In re Bd. of Trs. of the Leland Stanford Junior Univ.*, 989 F.3d 1367, 1373-74 (Fed. Cir. 2021). The Federal Circuit determined that the claim may have been an improved "mathematical process," but it was not an improved "technological process." *Id*. at 1373. In contrast, claim 3 claims an enhanced way of

[2] As explained in Plaintiffs' opposition, Defendant's reductionist approach ignores the meaning of the claim's terms that demonstrate it is directed to a method of computer processing. Opp. 9-10. Defendant does not dispute this. Reply 4 n.3.

allowing computers to perform finite field operations more efficiently through a *technological process*, *i.e.*, by combining "nonreducing" "wordsized" operations with the performance of a "specific" modular reduction after completing the wordsized operation on each machine word, Opp. 4-7; Dkt. 1, ¶¶90-92, making it "an improvement in the computer technology itself," *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127 (Fed. Cir. 2018).[3] Claim 3 does not invoke computers as a tool but instead claims a new process that "improv[es] computers' functionality as a tool." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 (Fed. Cir. 2018). Accordingly, "the plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016).

Defendant's attempts to distinguish this case from *Enfish* and *Infernal Tech., LLC v. Sony Interactive Ent. LLC*, No. 2:19-CV-00248-JRG, 2021 WL 5804262 (E.D. Tex. Dec. 7, 2021), fall flat. In *Enfish*, the improvement to computer functionality (the "self-referential table") and the accompanying benefits ("increased flexibility, faster search times, and smaller memory requirements") were the results of performing the claimed *algorithm*, which was capable of running on a general-purpose computer. *Enfish*, 822 F.3d at 1337 ("Here, the claims are … specifically directed to a *self-referential* table for a computer database … reflected in step three of the 'means for configuring' algorithm described above."), 1338 ("Moreover, we are not persuaded that the invention's ability to run on a general-purpose computer dooms the claims."). In *Infernal*

[3] Defendant misapplies *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021). Reply 4. There, the asserted efficiency benefit was to the abstract idea itself, thus the Federal Circuit held the efficiency was "not different in kind from those what would accrue in the library analog." *PersonalWeb*, 8 F.4th at 1318. In contrast, the efficiencies here are the result of an improved computer-centric process that combines "nonreducing" "wordsized" operations with the performance of a "specific" modular reduction after completing the wordsized operation on each of a predetermined number of machine words. Opp. 4-7; Dkt. 1, ¶¶90-92.

*Tech.*, the improved computer functionality was "improve[d] graphics rendering in computers," *i.e.*, an improved "*algorithm*" for "*computing* lighting and shadowing on … computers." *Infernal Tech.*, 2021 WL 5804262 at *2, 4 (emphasis added). Accordingly, even if claim 3 of the '960 patent involves an "algorithm" for computing information, it is still patent-eligible because it improves computer technology rather than an abstract idea, as in *Enfish* and *Infernal Tech*.[4]

Defendant's Step 2 arguments fail to overcome Plaintiffs' arguments and well-pled allegations in the complaint that show the claims recite an inventive concept that improves over prior techniques for performing finite field operations. Opp. 12-14; Dkt. 1, ¶¶90-92. The thrust of Defendant's argument is that because (in its view) claim 3 is merely directed to a mathematical algorithm (which is not true), there is nothing more to analyze because mathematical algorithms cannot provide an inventive concept. Reply. 5. But just because a claim *involves* math does not mean it is necessarily abstract. *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1349 (Fed. Cir. 2017). To meet its burden of proving ineligibility by clear and convincing evidence, Defendant needed to demonstrate that the claim elements—both individually and as an ordered combination—do not involve more than well-known, routine, or conventional activities. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367-68 (Fed. Cir. 2018). That requires analyzing *all* of the claim elements, which Defendant studiously avoids doing. *See* Mot. 16-18; Reply 5; *McRO*, 837 F.3d at 1313 ("Whether at step one or step two of the *Alice* test, in determining the patentability of a method, a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps."). Accordingly, Defendant has failed to meet its burden as a

[4] Defendant's citation to *Intellectual Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015), Reply 4, is inapt because unlike that case, the speed and efficiency improvements of claim 3 are not merely the result of "applying an abstract idea … on a generic computer," *id.* at 1371, but instead are the result of improving computer functionality itself by enhancing how computer operations are performed. Opp 4-7.

matter of law.

## II. The ’827 and ’370 Patents Claim Eligible Subject Matter.

At *Alice* Step 1, Defendant focuses on the first word of each step in claim 1 of the ’827 Patent[5] to argue that the claim is directed to “receiving,” “obtaining,” and “generating” data. Reply 6. This again is an oversimplification designed to make the claims sound abstract. *PowerBlock*, 2025 WL 2301853, at *5; *Trinity*, 72 F.4th at 1361; *McRO*, 837 F.3d at 1313. And only by ignoring the specific requirements of claim 1 can Defendant (incorrectly) analogize this case to *Univ. of Fla. Research Found., Inc. v. GE Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019). Reply 6. In that case, the patent at issue sought “to automate ‘pen and paper methodologies’” and “acknowledge[d] that data … was previously collected, analyzed, manipulated, and displayed manually, and it simply proposed doing so with a computer.” *Id.* (citing other “do it on a computer” cases). This case is different. The claimed methods here do not merely automate what was previously done in the art with pen and paper or mentally. As explained in Plaintiffs’ Opposition and in the Complaint, ECDSA digital signatures are computer-centric technology based on public key cryptography—a mechanism for securing electronic messages that was created after the advent of computers to address computer-specific security problems. Opp. 16-18, 20; Dkt. 1, ¶64-66; ’827 pat., 1 at 1:18-48. The ’827 and ’370 Patents claim specific improvements over conventional means of verifying ECDSA digital signatures that “can save on bandwidth and storage” and “yield[] reduced verification times,” and those improvements are captured in the elements of each claim. Opp. 16-19; ’827 Pat., 15:53-56; Dkt. 1., ¶¶63, 72-75; *Enfish*, 822 F.3d at 1337; *Aatrix*, 882 F.3d at 1127-28. Because the claims here are directed to specific improvements to overcome problems arising

---

[5] Defendant again argues that claim 1 of the ’827 Patent is representative of the asserted claims of the ’827 and ’370 Patents. Reply 6. Defendant’s conclusory arguments are similar to those in its opening brief, which Plaintiffs already rebutted. Opp. 24-25.

in an inherently technological process[6], this case is unlike *University of Florida* (and cases cited therein)[7] and instead is like *Diamond v. Diehr*, 450 U.S. 175, 192 (1981) (claims are patent eligible under § 101 "when a claim containing a mathematical formula implements or applies that formula in a … process which, when considered as a whole, is performing a function which the patent laws were designed to protect."); *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("[T]he claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.").

Defendant's argument that the mathematical formula $Q=r^{-1}(sR-eG)$ "is the focus of the claim" ignores the surrounding claim language. As explained in Plaintiffs' Opposition, the claims describe a new signature verification process of which the equation is only a part. Opp. 16-19. The new verification process involves receiving a signature on a message—*without* the public key that was conventionally included—obtaining a point (R) based on a first signature component (r) and *generating* the public key based on the point and a hash value computed from the message using the equation for Q. *Id.* The claims thus describe an improvement to a technological process, *i.e.*, "a way of making computer communication itself more effective" by improving a mechanism that "mak[es] that

[6] Public key cryptography and digital signatures are within the technological field of data security for electronic communications. Opp. 16-18, 20; Dkt. 1, ¶64-66; '827 pat., 1 at 1:18-48. *See TQP Dev., LLC v. Intuit Inc.*, 2014 WL 651935, at *3, *7 (E.D. Tex. Feb. 19, 2014) (noting that "the concept at the heart of the invention … [is] specific to a particular technological field—that of data encryption" and "has equally concrete and valuable effects in the field of electronic communications").

[7] For similar reasons, this case is also unlike *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021); *Optis Cellular Tech. LLC v. Apple Inc.*, 139 F.4th 1363, 1380 (Fed Cir. 2025); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014); *Parker*, 437 U.S. at 595; *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016); *Stanford*, 989 F.3d at 1374; and *Intellectual Ventures I*, 792 F.3d at 1370 (*see* Reply 6-7) where the alleged improvement was to an underlying abstract process, not a technological process as in this case. Opp. 16-19.

communication secure." *TQP*, 2014 WL 651935, at *7; *see id.* at *3-4; *Enfish*, 822 F.3d at 1335, 1337. Defendant's repeated invocation of the word "algorithm" does not change this. *Infernal Tech.*, 2021 WL 5804262, at *2, *4 (finding improved shadow rendering algorithm patent-eligible); *Enfish*, 822 F.3d at 1337-38 (improved algorithm for self-referential supported patent-eligibility).

At Step 2, Defendant again oversimplifies the claims by calling them "an algorithm" to avoid analyzing whether the individual elements and their ordered combination contain a patent-eligible inventive concept. Reply 8. But these reductive characterizations do not relieve Defendant of its burden of proving a lack of inventive concept by clear and convincing evidence, *Berkheimer*, 881 F.3d at 1367-68, which it cannot do if it does not analyze the elements individually and in combination without ignoring their specific requirements, *McRO*, 837 F.3d at 1313.[8] Moreover, because claims involving algorithms can be patent eligible, *see, e.g.*, *Enfish*, 822 F.3d at 1335, 1337; *Infernal Tech.*, 2021 WL 5804262, at *2, *4, labeling the claim "an algorithm" does not suffice.

## III. The '286 Patent Claims Eligible Subject Matter.

As with the other Asserted Patents, Defendant oversimplifies claim 1 of the '286 patent at *Alice* Step 1 by ignoring its salient details.[9] Reply 9. For example, Defendant ignores most of the limitations of element 1[b], which requires "computing a modified operand using a reduction value**, instead of a modulus used in performing a standard Montgomery reduction, to perform a replacement of a least significant word of the operand, rather than perform a cancellation thereof, the reduction value being a function of the modulus**." '286 Pat., cl. 1. These limitations are part of the claimed improvement over conventional processing techniques

[8] Defendant's assertion that "Plaintiffs make no arguments that claim construction is required," Reply 8 n.8, is false. *See* Opp. 21.

[9] Defendant argues that claim 1 is representative. Reply 9. Defendant's conclusory arguments are similar to those in its opening brief, which Plaintiffs rebutted. Opp. 30.

that produce the technical benefits of reducing bit shifts, processor utilization, and register (memory) usage—improved computer functionality. Opp. 25-26. Ignoring them to concoct abstractness is improper. *Trinity*, 72 F.4th at 1361.

Defendant's argument that the '286 Patent "admitted" the claimed process is abstract and not a technological improvement to computers is belied by the evidence. Defendant cites the invention's intent "[t]o improve the reduction efficiency of a Montgomery machine," Reply 9, but omits that a "Montgomery machine" is computer technology. '286 Pat., 1:65-2:3, 3:65-4:5. Defendant also ignores other disclosures that teach that in order to achieve improved computer efficiency, the claimed technique "maximize[s] the number of components that can be kept in registers, reducing the loading and storing of temporary values"—these are computer functions. '286 Pat., 3:21-26. The invention therefore is directed towards how a computer operates to execute Montgomery-style operations. Opp. 25-26. In any event, whether these improvements are technological or mathematical is a factual dispute that precludes dismissal. *See Aatrix*, 882 F.3d at 1127-28.

Defendant's argument that "claim 1 has none of the alleged technological improvements" not only raises a dispute of fact precluding dismissal, *see GREE Inc. v. Supercell OY*, 2020 WL 896771, at *6 (E.D. Tex. Jan. 21, 2020), it is also incorrect. Claim 1 recites "computing a modified operand using a reduction value, instead of a modulus used in performing a standard Montgomery reduction, to perform a replacement of a least significant word of the operand, rather than perform a cancellation thereof, the reduction value being a function of the modulus," which are improvements to computer processing that result in enhanced computer functionality, *i.e.*, fewer bit shifts, less processor utilization, and less register usage. Opp. 25-27; *see Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020) ("Claims need not articulate the

advantages of the claimed combinations to be eligible.”).[10]

At Step 2, Defendant tries to shift its burden to Plaintiffs, but cannot. *See US Synthetic Corp. v. Int’l Trade Comm’n*, 128 F.4th 1272, 1284 (Fed. Cir. 2025) (“[I]t was not USS’s burden to prove that its patents are valid.”). It is *Defendant’s* burden to prove by clear and convincing evidence that there are no additional transformative features in the claims, *Berkheimer*, 881 F.3d at 1368, but it failed to do so, having never analyzed *the specific requirements of the claimed steps* individually or as an ordered combination. Mot. 28-29 (oversimplifying the claims); Reply 10 (not analyzing elements); *McRO*, 837 F.3d at 1313 (“[A] court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps.”). In any event, Plaintiffs demonstrated (at the very least, raised a dispute of material fact) that claim 1 recites an inventive concept: an unconventional way for computers to execute Montgomery-style processes that utilizes fewer computing resources and registers, thereby improving computer functionality. Opp. 28-30.

---

[10] Defendant’s arguments that claim construction is not necessary rings hollow. Reply 10 n.10. Construing terms like “least significant word” and “word” would help show that what the claims are “directed to” is an improved computer process, not a mathematical algorithm as Defendant argues. Opp. 27-28. This is true whether the invention is embodied in hardware or software. *Enfish*, 822 F.3d at 1335 (“Software can make non-abstract improvements to computer technology just as hardware improvements can….”).

Dated: September 8, 2025

*Of Counsel*:

Andrea L. Fair
Texas Bar No. 24078488
Claire Abernathy Henry
Texas State Bar No. 24053063
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy.
Longview, TX 75604
Tel: (903) 757-6400
andrea@millerfairhenry.com
claire@millerfairhenry.com

*/s/ Philip J. Eklem by permission Claire Abernathy Henry*
Philip J. Eklem – LEAD ATTORNEY
**REICHMAN JORGENSEN LEHMAN & FELDBERG LLP**
1909 K Street NW, Suite 800
Washington DC, 20006
Tel: (202) 894-7310
peklem@reichmanjorgensen.com

Khue V. Hoang
**REICHMAN JORGENSEN LEHMAN & FELDBERG LLP**
400 Madison Avenue, Suite 14D
New York, NY 10017
Tel: (212) 381-1965
khoang@reichmanjorgensen.com

Matthew G. Berkowitz
**REICHMAN JORGENSEN LEHMAN & FELDBERG LLP**
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
mberkowitz@reichmanjorgensen.com

*Attorneys for Plaintiffs Malikie Innovations, Ltd. and Key Patent Innovations, Ltd.*

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically on September 8, 2025 pursuant to Local Rule CV-5(a) and has been served on all counsel who have consented to electronic service.

*/s/ Claire Abernathy Henry*
Claire Abernathy Henry