**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| Malikie Innovations Ltd. and Key Patent Innovations Ltd., | § | |
| *Plaintiff*, | § | Case No. **2:25-cv-00519-JRG-RSP** |
| | § | [redacted] |
| v. | § | |
| Core Scientific, Inc. | § | |
| *Defendant*. | § | |

**DEFENDANT CORE SCIENTIFIC, INC.'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**

## TABLE OF AUTHORITIES

**Cases**

*Athalonz LLC v. Under Armour, Inc.*, No. 2-23-cv-00193-JRG, 2023 WL 8809293 (E.D. Tex. Dec. 20, 2023) ........ 4

*Continental Grain Co. v. The FBL-585*, 364 US 19 (1960) ........ 5

*In re Apple Inc.*, 979 F.3d 1332 (Fed. Cir. 2020) ........ 2

*In re Clarke*, 94 F.4th 502 (5th Cir. 2024) ........ 3

*In re DISH Network LLC*, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) ........ 1, 5

*In re Google LLC*, 58 F.4th 1379 (Fed. Cir. 2023) ........ 3

*In re Juniper Networks Inc.*, 14 F.4th 1313 (Fed. Cir. 2021) ........ 5

*In re Radmax, Ltd.*, 720 F.3d 285 (5th Cir. 2013) ........ 3

*In re Samsung Electronics Co., Ltd.*, 2 F.4th 1371 (Fed. Cir. 2021) ........ 1, 2

*Intellectual Ventures I, LLC v. Canon Inc.*, 143 F. Supp. 3d 143 (D. Del. 2015) ........ 3

*SportsCastr Inc. v. Sportradar Grp.*, 2024 WL 4219252 (E.D. Tex. Sept. 17, 2024) ........ 5

**Rules**

Fed. R. Civ. P. 45(c)(1) ........ 4

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| Malikie Innovations Ltd. and Key Patent Innovations Ltd. | Malikie or Plaintiffs |
| Core Scientific, Inc. | CS or Defendant |
| Core Scientific's Motion to Transfer Venue Under 28 U.S.C. § 1404(a) (Doc. No. 23) | Mot. |
| Plaintiffs' Opposition to Motion to Transfer Venue (Doc. No. 45) | Opp. |
| *Malikie Innovations Ltd. and Key Patent Innovations Ltd. v. MARA Holdings, Inc.*, Case No. 7:25-cv-00222-DC-DTG (W.D. Tex.) | MARA Case |
| Eastern District of Texas | EDTX |
| Western District of Texas | WDTX |
| Declaration of Cline Kezar in Support of Motion to Transfer (Doc. No. 23-1) | Kezar Decl. |
| Second Declaration of Cline Kezar in Support of Motion to Transfer (filed herewith) | 2nd Kezar Decl. |
| Declaration of Brian E. Ferguson in Support of Motion to Transfer (Doc. No. 23-2) | Ferguson Decl. |
| Second Declaration of Brian E. Ferguson in Support of Motion to Transfer (filed herewith) | 2nd Ferguson Decl. |

Emphasis – All emphasis added unless otherwise noted

CS showed that the WDTX is a clearly more convenient forum for this case. Malikie's opposition fails to show otherwise. Ultimately, public factor 2 favors transfer and factors 1, 3, and 4 are neutral. Private factor 1 favors transfer, factor 2 is neutral, factor 3 strongly favors transfer, and factor 4 favors transfer. CS has therefore met its burden.

**THE PUBLIC FACTORS**

Malikie argues that public factor 1 (court congestion) weighs against transfer. Not so. EDTX and WDTX have median times to trial of 24 and 25 months, respectively. *See* Exs. N, O. And the MARA Case in WDTX, involving the same patents, has a scheduled trial date of March 1, 2027. Ex. W. While the present case has trial set for January 25, 2027, there are several other trials scheduled to start on that day. Ex. R. This Court and the WDTX courts have busy dockets and apply approximately the same schedules in patent cases, so this factor is neutral.

Public factor 2 (local interest) supports transfer. *See* Mot. at 8-10. Malikie makes much of CS's Denton Data Center and the prior mining operations there. But first, CS has never denied that venue here is proper—instead, venue is clearly less convenient. And second, that alleged acts of infringement occurred at one time in EDTX is not controlling. *See In re Samsung Electronics Co., Ltd.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) ("The fact that infringement is alleged in the [WDTX] gives that venue ***no more of a local interest*** than … any other venue.").

Moreover, the alleged infringing acts in Denton ceased by the end of 2024, and all mining machines were removed from Denton, with most being relocated to CS's Pecos Data Center. CS still performs mining today in WDTX. Therefore, because the alleged infringing acts are ongoing in WDTX, ***and*** Austin is CS's hub for activities relating to mining and its daily business (Kezar Decl., ¶¶ 9-10, 13, 16-19), the citizens of WDTX have a greater interest in this case. *In re DISH Network LLC*, 2021 WL 4911981, *3 (Fed. Cir. Oct. 21, 2021) (holding that even if defendant's

"Texas-based operations may have some connection to [the accused technology], that connection is insubstantial compared to Colorado's significant connection to the design and development of the accused features."); *In re Apple Inc.*, 979 F.3d 1332, 1345-46 (Fed. Cir. 2020).

Malikie asserts that in 2024, CS mined more bitcoin from the Denton Data Center than the Pecos Data Center. But those alleged infringing acts do not give EDTX any greater interest over WDTX. *Samsung*, 2 F.4th at 1380. Malikie's argument also ignores the fact that mining continues in Pecos, and through August 2025, the Pecos Data Center had mined ***43% more bitcoin*** than the Denton Data Center. Ex. 3 (showing the Cottonwood bitcoin total to be [redacted] compared to [redacted] in Denton).[1] That discrepancy will only grow as trial approaches.

Malikie also argues that CS is Denton Municipal Electric's ("DME") largest customer and therefore this case is meaningful to Denton residents. The evidence shows the opposite. The Denton City Council ***applauded*** CS's exit from crypto mining in favor of high-performance computing (HPC) directed towards A.I. computing. CS's decision in 2024 to eliminate mining in Denton in favor of HPC meant more jobs "for the local workforce" and more tax revenue for the city. Ex. K at 3. As a Denton City Councilman stated, the "conversion of the [CS] data center from cryptocurrency mining to [a] standard data center ***not only aligns with our approved key priorities but ALSO gets rid of the problematic associations that crypto has***…." *Id.* at 4. As to power usage, the change from mining to HPC was better for Denton because it provided DME with a fixed electricity load instead of the variable one used for mining. *Id.* (stating that such a contract was "more reliable"); *see* Ex. U at 3 (Councilman stating that the city and DME benefit from the switch to HPC/AI from mining because under HPC they "***generate more revenue*** per kilowatt than under the old [crypto] method"). The evidence shows that Denton does not want to

[1] "Cottonwood" refers to CS's Pecos Data Center. *See* Ex. 1 at 8.

be associated with mining and as such has no interest in this lawsuit involving mining. Between WDTX and EDTX, the public interest factor favors the former.[2, 3]

**THE PRIVATE FACTORS**

Private factor 1 (access to sources of proof) favors transfer. Mot. at 10-12. While Malikie argues that CS's documents and source code are electronically stored, that CS maintains this evidence in WDTX remains relevant. *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) ("[T]he question is relative ease of access, not absolute ease of access."). Further, physical evidence—the mining machines—is found in WDTX, not EDTX. *In re Google LLC*, 58 F.4th 1379, 1385 (Fed. Cir. 2023) ("Physical prototypes of the accused products have been identified only as in [ND Cal.]…. The Northern District would clearly provide easier access to sources of proof, including documents….").[4]

Malikie's analysis of private factor 2 (compulsory process) is also wrong. Malikie's analysis of CS current or former employees in Denton in its private factor 2 analysis (and while not relevant, public factor 2 analysis) is without merit. CS has never disputed that it has employees in EDTX in its Denton Data Center. But the mere presence of employees does not equate to likely witnesses ***for trial***. CS identified seven employees that will testify at trial, all of

[2] Malikie's analysis of CS witnesses for this factor is off-base because the parties' connection to the venue is not considered. *In re Clarke*, 94 F.4th 502, 511 (5th Cir. 2024).

[3] The parties agree public factors 3 and 4 are neutral. Opp. at 8-9.

[4] Malikie's argument that "firmware" is found on CS's share drive and can be downloaded from third-party Bitman's website (Opp. at 10) is not persuasive. Firmware is provided as a binary file (1s and 0s), cannot be read by humans, and the human readable source code for the firmware is not provided with the firmware. *See* Ex. V (describing firmware); *Intellectual Ventures I, LLC v. Canon Inc.*, 143 F. Supp. 3d 143, 174 n.40 (D. Del. 2015) ("Human-readable source code is compiled into firmware that is shipped with a [product]. The human-readable source code itself is not shipped with the [product]."). And the evidence Malikie cites (Ex. 13) shows the source of firmware as "Cottonwood," which is in Pecos. *See* fn. 1.

whom are senior level with management responsibilities directly related to CS and the accused technology. Mot. at 12-13. Six of the seven are in WDTX; none are in EDTX. The employees that Malikie identifies in EDTX are lower-level employees as their job titles (*see* e.g. Malikie Exs. 5 and 6) confirm. Many of the jobs do not require a college degree. *See* Malikie Exs. 7-10.[5] Moreover, Malikie asserts that the EDTX employees merely "could" be "potential" witnesses or are "likely to have relevant knowledge." Opp. at 5.[6] That is in stark contrast to CS's statement that the six WDTX-based employees "will testify at trial." Mot. at 12.

As to non-parties, Malikie identifies only a Blackberry in-house counsel (Mr. McBeath) as being based in EDTX (in Irving, Keller, and/or Plano). Assuming he is relevant, the WDTX court also has full subpoena power over him (and Blackberry). *Athalonz LLC v. Under Armour, Inc.*, No. 2-23-cv-00193-JRG, 2023 WL 8809293, *4 (E.D. Tex. Dec. 20, 2023) ("[A] district court has the power to compel attendance at trial for all residents of the state in which the district court sits…."). Irving, Keller, and Plano are all within 100 miles of WDTX's northern border (2nd Ferguson Decl., ¶¶ 8-13), so Mr. McBeath is also subject to a WDTX subpoena under Fed. R. Civ. P. 45(c)(1)(A) and 45(c)(1)(B)(ii). *Athalonz*, at *4 ("At least two of Athalonz's witnesses … reside within 100 miles of the [EDTX], meaning that the Court can compel both of these witnesses" to attend depositions and trial "within the [EDTX]."). Private factor 2 is thus neutral.[7]

---

5 This contrasts with the complex mathematical algorithms covered by the asserted patents. *See* Exs. B-G (showing that at least five of the six named inventors had Ph.D. degrees).

6 Malikie cannot show that the EDTX witnesses are more knowledgeable than the CS witnesses in WDTX. *See* 2nd Kezar Decl., ¶¶ 4-20 (explaining that many of the current or former CS employees Malikie identifies in Denton have no relevant knowledge of the accused technology, and the few that might have far less knowledge than the seven witnesses CS identified would testify at trial); Ex. S at 358:15–363:14.

7 Malikie's "licensing advisor" (PPS) is in Frisco. Opp. at 12. The WDTX court also has subpoena power over PPS. *See* 2nd Ferguson Decl., ¶¶ 11-13.

Malikie's argument that private factor 3 (willing witnesses) "only slightly" favors transfer is wrong. The six CS witnesses in WDTX have knowledge of the key issues in the case. Mot. at 12-14.[8] Malikie has identified no witnesses of its own and no third-party witnesses who cannot testify in WDTX. To the extent Malikie argues it is more convenient for the one or two third-party witnesses to travel to Marshall over Austin, that is more than offset by the major inconvenience of six CS witnesses who must travel to Marshall over testifying in the court close to their residence and work. Mr. Kezar declared it would be much more convenient for the CS witnesses in WDTX if trial is in Austin. Kezar Decl., ¶ 21. This factor strongly favors transfer. *DISH Network*, 2021 WL 4911981 at *2.[9]

Private factor 4 also favors transfer. The MARA Case is proceeding in parallel with a Feb. 18, 2026, *Markman* hearing. Ex. W. MARA has not filed a motion to transfer so the case is going forward. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that Sec. 1404(a) was designed to prevent." *Continental Grain Co. v. The FBL-585*, 364 US 19, 26 (1960); *cf. SportsCastr Inc. v. Sportradar Grp.*, 2024 WL 4219252 (E.D. Tex. Sept. 17, 2024) (expressing concern over the likelihood that "this Court and the Delaware court may yield inconsistent results."). Transferring this case will avoid that possibility.

---

8 The one CS witness in North Carolina also testified that it would be more convenient for him if trial is in Austin over Marshall. *See* Ex. T at 90:13-91:6.

9 The Federal Circuit has rejected Malikie's argument that the convenience of defendant's witnesses "is given less weight." *In re Juniper Networks Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021) ("We have previously rejected … the proposition that the convenience-to-the-witnesses factor is attenuated when the witnesses are employees of the party calling them.").

Dated: October 24, 2025

Respectfully submitted,

/s/ *Brian E. Ferguson*

Brian E. Ferguson
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, D.C. 20036
Telephone: (202) 282-5276
Email: beferguson@winston.com

Rex A. Mann
WINSTON & STRAWN LLP
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Tel.: (214) 453-6500
Email: rmann@winston.com

Olivia A. Wogon
WINSTON & STRAWN LLP
800 Capitol St., Suite 2400
Houston, TX 77002
Tel.: (713) 651-2600
Email: owogon@winston.com

Yuchen Han
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
Tel.: (213) 615-1700
Email: yhan@winston.com

***Attorneys for Core Scientific, Inc.***

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document has been served on counsel of record, who are deemed to have consented to electronic service, on October 24, 2025, via electronic mail.

/s/ *Brian E. Ferguson*
Brian E. Ferguson

[redacted]

[redacted]