IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| Malikie Innovations Ltd. and<br>Key Patent Innovations Ltd.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>Core Scientific, Inc.<br><br>　　　　　　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:25-CV-519-JRG-RSP<br><br>JURY TRIAL DEMANDED |

**CORE SCIENTIFIC'S RESPONSE TO PLAINTIFFS' OPPOSED MOTION FOR LEAVE TO AMEND COMPLAINT AND INFRINGEMENT CONTENTIONS**

i

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................... i

II. BACKGROUND ..................................................................................................................... ii

III. LEGAL STANDARD .............................................................................................................. v

IV. ARGUMENT .......................................................................................................................... vi

    A. Under Rule 15, Plaintiffs' proposed amendment is futile ....................................... vi

    B. There is no good cause for the proposed amendment under Rule 16. ................. viii

        1. This amendment, especially with no change in schedule, would greatly prejudice Core Scientific. ............................................................ viii

        2. Plaintiffs provide no reason for their delay .................................................. x

        3. A continuance would be necessary to maintain a case of the scope desired in the amendment. .......................................................... xi

    C. Plaintiffs lack good cause to amend their infringement contentions for the '286 Patent. ........................................................................................................... xi

V. CONCLUSION ...................................................................................................................... xii

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alacritech Inc. v. CenturyLink, Inc.*,
   No. 2:16-CV-693-JRG-RSP, 2017 WL 3007464 (E.D. Tex. July 14, 2017) ..........................11

*Apex Beam Techs. LLC v. TCT Mobile Int'l Ltd.*,
   No. 2:21-CV-438-JRG, 2024 WL 1744063 (E.D. Tex. Apr. 22, 2024) ....................5, 6, 10, 11

*Glob. Sessions LP v. Travelocity.com LP*,
   No. 6:10-CV-671 LED-JDL, 2012 WL 1903903 (E.D. Tex. May 25, 2012)..........................11

*In re Horseshoe Ent.*,
   337 F.3d 429 (5th Cir. 2003) ....................................................................................................3

*Joy Techs., Inc. v. Flakt, Inc.*,
   6 F.3d 770 (Fed. Cir. 1993) ......................................................................................................7

*Koninklijke KPN N.V. v. Samsung Elecs. Am., Inc.*,
   No. 2:14-CV-1165-JRG, Dkt. 58 (E.D. Tex. July 28, 2015) .................................................1, 8

*In re Nintendo Co.*,
   544 F. App'x 934 (Fed. Cir. 2013) ...........................................................................................3

*Ricoh Co. v. Quanta Comput. Inc.*,
   550 F.3d 1325 (Fed. Cir. 2008)................................................................................................7

*In re Samsung Elecs. Co.*,
   2 F.4th 1371 (Fed. Cir. 2021) ...................................................................................................1

*Select Rsch., Ltd. v. Amazon.com, Inc.*,
   No. 4:23-CV-865-SDJ, 2024 WL 3585106 (E.D. Tex. July 30, 2024) ....................................6

*Sol IP, LLC v. AT&T Mobility LLC*,
   No. 2:18-CV-527-RWS-RSP, 2020 WL 1911388 (E.D. Tex. Apr. 20, 2020) ........................12

*Sybase, Inc. v. Vertica Sys., Inc.*,
   No. 6:08 CV 24, 2009 WL 4574690 (E.D. Tex. Nov. 30, 2009)............................................10

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)..................................................................................................................1

**Statutes**

28 U.S.C. § 1404(a) ...................................................................................................................1, 2, 3

35 U.S.C. § 101 ..................................................................................................................... 2, 3

**Other Authorities**

Fed. R. Civ. P. 15 ....................................................................................................................... 5, 6

Fed. R. Civ. P. 16 ....................................................................................................................... 5, 8

I.      INTRODUCTION

Plaintiffs Malikie Innovations Ltd. and Key Patent Innovations Ltd. (collectively, "Plaintiffs") originally brought suit on May 12, 2025, alleging infringement of five of their patents by Defendant Core Scientific, Inc.'s ("Core Scientific") bitcoin mining operations. Dkt. 1 ¶ 5–6. Core Scientific sought to transfer the case (*see* Dkt. 23) because it publicly announced it had ceased all bitcoin mining operations in this District six months before Plaintiffs brought suit. After Plaintiffs demanded and received extensive and expensive discovery that confirmed Core Scientific's public withdrawal from bitcoin mining in this District, Plaintiffs now belatedly seek to add a new patent, and a previously asserted patent, against an entirely different, and unrelated, business—Core Scientific's "high-performance computing ('HPC') operations." Dkt. 51 at 2; Dkt. 51-3 ¶¶ 48, 54–56.[1] For those operations, however, Core Scientific merely hosts third-party customer computers in its data centers for uses such as artificial intelligence computing—but not bitcoin mining.

Plaintiffs' proposed amendment should be denied for the following reasons. ***First***, the proposed amendment is futile because it fails to state a plausible claim for relief. ***Second***, Plaintiffs' late attempt to introduce a new patent and product into the case on a shortened schedule is unduly prejudicial to Core Scientific. Plaintiffs' new infringement allegations expand the scope of the case well beyond what was contemplated in the original complaint. *See Koninklijke KPN N.V. v. Samsung Elecs. Am., Inc.*, No. 2:14-CV-1165-JRG, Dkt. 58 at 3 (E.D.

---

[1]     This is apparent by Plaintiffs' explicit inclusion of Defendant's HPC business in their new factual allegations for jurisdiction and venue. *See* Dkt. 51-3 ¶ 126. To the extent that Plaintiffs attempt to rely on the new allegations in the proposed amendment to argue for denial of the pending motion to transfer under 28 U.S.C. § 1404(a), that is plainly improper, as a party cannot defeat a motion to transfer via their "own deliberate acts or omissions." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1377–78 (Fed. Cir. 2021) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 624 (1964)). As explained herein, there is no valid reason why Plaintiffs waited six months to raise their new allegations against Core Scientific's HPC business.

Tex. July 28, 2015). These new allegations implicate direct infringement by third parties, e.g., Core Scientific's compute customers, who operate their own computing machines in Core Scientific's data centers. In operating their machines, these customers use processing chips for various purposes, but none of these uses relate to the bitcoin mining at issue in this litigation. Permitting this amendment will require significant third-party discovery and the addition of third-party defendants to this case. Plus, all of Core Scientific's actions over the last six months have been tied to the scope of the original complaint—Core Scientific's bitcoin operations—including its motion to dismiss under 35 U.S.C. § 101 (Dkt. 20), motion to transfer under 28 U.S.C. § 1404(a) (Dkt. 23), actions during discovery, prior art searches, and invalidity contentions. Those six months constitute a significant portion of the total timeline expected for this case—which is currently set to go to trial in fourteen months, on January 25, 2027. Dkt. 40 at 1. ***Third***, Plaintiffs' proposed amendment lacks good cause. It is undisputed that before Plaintiffs filed their original complaint, Plaintiffs owned the newly asserted patent, and Core Scientific openly operated its HPC business. No new facts here justify consolidation of Plaintiffs' new and unrelated allegations to this case.

Finally, to the extent that Plaintiffs' proposed amendment is allowed, continuance is required. Plaintiffs' unsupported position that their proposed amendment should be allowed without alteration to the current case schedule is entirely prejudicial to Core Scientific. It forces Core Scientific to defend against Plaintiffs' new claims, which rely on an entirely different set of operative facts, on a condensed schedule with no identified efficiency gains. Plaintiffs should not be rewarded for their litigation tactics in this way.

## II.    BACKGROUND

Plaintiffs' original complaint asserted five patents—U.S. Patent Nos. 8,788,827 (the "'827 Patent"); 10,284,370 (the "'370 Patent"); 8,666,062 (the "'062 Patent"); 7,372,960 (the

"'960 patent"); and 8,532,286 (the "'286 Patent") (collectively, the "Asserted Patents")—and only accused Core Scientific's "bitcoin mining operations" of infringement. Dkt. 1 ¶¶ 5–6, 120, 128, 136, 140, 144. Relying on the original complaint, Defendant engaged in substantial early motion practice. First, on July 20, 2025, Defendant filed a motion to dismiss Plaintiffs' original complaint pursuant to 35 U.S.C. § 101. *See* Dkt. 20. This motion covered all Asserted Patents and moved to dismiss Plaintiffs' suit in its entirety. The briefing has been complete since September 8, 2025. Then, on July 24, 2025, Defendant moved to transfer this lawsuit to the Western District of Texas under 28 U.S.C. § 1404(a). *See* Dkt. 23. This motion focused on Core Scientific's publicly documented lack of bitcoin mining operations in the Eastern District of Texas. Following venue discovery, which only confirmed that Core Scientific's bitcoin mining operations in Denton, Texas ceased before the end of 2024, the briefing was completed on October 31, 2025.[2]

Since the beginning, Plaintiffs have treated this case as pertaining only to Core Scientific's bitcoin mining operations. The original complaint, for example, spends twenty pages detailing the history of bitcoin and singing its praises. *See* Dkt. 1 ¶¶ 7–37. As Defendant explained in its motion to transfer, however, it is in the process of converting many of its data centers to HPC sites. *See* Dkt. 23 at 3–4. Indeed, Core Scientific's Denton, Texas data center (its only one in this District) was fully converted to HPC by the end of 2024, with all of its bitcoin operations being moved to other data centers, primarily its Pecos, Texas data center. *Id*. Plaintiffs

---

[2] When, as here, a motion to transfer is pending, both the Federal Circuit and the Fifth Circuit have held that the motion to transfer should be resolved before any substantive motions (like the current one) are decided. *In re Nintendo Co.*, 544 F. App'x 934, 941 (Fed. Cir. 2013); *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003).

hardly engaged with these facts in their opposition to the motion to transfer (*see* Dkt. 45), instead focusing on the bitcoin mining allegations as set forth in their original complaint.

Plaintiffs then reached out on November 10, 2025—well after the deadlines for infringement contentions and invalidity contentions—and announced for the first time their desire to amend their complaint to add infringement allegations based on U.S. Patent No. 8,712,039 (the "'039 patent") and Core Scientific's HPC business. Plaintiffs provided no reasoning for their late notice, nor any explanation for why Core Scientific's HPC business was not included in the original complaint.

Specifically, Plaintiffs now seek to amend their original complaint to add the '039 Patent, which purportedly relates to "efficient implementations of hash algorithms on a computer processor," and to accuse an entirely different and unrelated business—Core Scientific's "HPC operations." Dkt. 51 at 2; Dkt. 51-3 ¶¶ 48, 54–56, 114–19, 165–72. Plaintiffs accuse those "HPC operations" of infringing not only asserted method claim 1 of the newly asserted '039 Patent but now also method claim 1 of the previously asserted '286 Patent. *Id.* ¶¶ 162–63, 170–71. Plaintiffs appear to acknowledge that their infringement allegations against the newly asserted '039 Patent only implicate Core Scientific as an indirect infringer with respect to their allegations for the HPC operations. Dkt. 51-3 ¶ 60 ("Core Scientific has induced and/or contributed and continues to induce and/or contribute to the processing of SHA-256 calculations.").[3] This is unsurprising. Core Scientific's HPC business involves Core Scientific merely providing real estate, e.g., floor space, electrical power, cooling, and facilities operations, to third parties, such as CoreWeave, Inc. ("CoreWeave"), who bring in and operate the computing devices that

---

[3] Plaintiffs also do not assert that Core Scientific directly infringes the '286 Patent for any activity relating to HPC. *See* Dkt. 51-3 ¶ 160.

4

underlie Plaintiffs' new infringement allegations. Dkt. 23-10 at 11 ("Beginning on March 6, 2024, we announced a series of new contractual agreements with CoreWeave, Inc., a third-party provider of high-performance computing ('HPC') operations for customers using specialized graphics processing units ('GPUs'). . . . Our high-density colocation services provide space, power, cooling, facilities operations, security and other services to third-party HPC customers to support workloads for machine learning and artificial intelligence."); Dkt. 23-1 ¶ 4.

### III.     LEGAL STANDARD

To start, as Plaintiffs noted in their Motion, it is unclear whether Plaintiffs' bid to amend their original complaint falls under Rule 15 or Rule 16. *See* Dkt. 51 at 4. But either way, Plaintiffs have not met the standard.

For Rule 15, the focus is on whether there is "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." to prevent leave from being freely given. *Apex Beam Techs. LLC v. TCT Mobile Int'l Ltd.*, No. 2:21-CV-438-JRG, 2024 WL 1744063, at *1 (E.D. Tex. Apr. 22, 2024).

For Rule 16, the question is whether there is good cause. *Id.* In the good cause inquiry, the Court considers "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice." *Id.*

Separately, Plaintiffs' request to amend their infringement contentions with respect to the '286 Patent is unquestionably governed by the good cause standard. *See* P.R. 3-6(b) ("Amendment or supplementation of any Infringement Contentions . . . shall be entered only upon a showing of good cause."). As set forth below, Plaintiffs have certainly failed to articulate

5

any good cause for belatedly adding a product to the case when that product was publicly known and could have been included in the original complaint.

IV.     **ARGUMENT**

Plaintiffs do not identify any of the supposed efficiency gains that their proposed amendment achieves. That is because there are none. This is not a case like *Apex*, where the defendant "acknowledge[ed] that all the patents relate to 5G communication technologies" and the plaintiff had already accused "the entirety of the [Defendants'] '5G mobile handsets and tablets.'" *Apex*, 2024 WL 1744063, at *3–4. Here, Plaintiffs' desired new claims arise out of an entirely different business model of Defendant that was not previously accused. That makes this case unlike both *Apex* and *Netlist*, which are the backbone of Plaintiffs' Motion and cited together for nearly every point. Comparatively, Defendants' bitcoin mining business and its HPC business involve different hardware, different software, different facilities, different employees and custodians, and, importantly, different third parties. Plaintiffs' attempt to downplay this by claiming their Motion involves only "one patent" and "one additional accused product" is disingenuous given the scope of these additions.

A.      **Under Rule 15, Plaintiffs' proposed amendment is futile.**

Notwithstanding the delay, which is discussed in the following section, Plaintiffs' new allegations do not (and cannot) state a plausible claim for relief. *See Select Rsch., Ltd. v. Amazon.com, Inc.*, No. 4:23-CV-865-SDJ, 2024 WL 3585106, at *4 (E.D. Tex. July 30, 2024) ("If the complaint, as amended, would be subject to dismissal, then the amendment is futile and the district court [is] within its discretion to deny leave to amend.").

Plaintiffs fail to plausibly allege direct infringement with respect to Core Scientific's HPC business. Core Scientific does nothing but supply infrastructure for its HPC customers, the most important of which is real estate and power. The computing machines that Plaintiffs

6

identify and rely on for their new infringement allegations are not owned, manufactured, sold, offered for sale, operated, or used by Core Scientific. Nor do Plaintiffs make any colorable allegation that Core Scientific somehow induces its HPC customers like CoreWeave to operate their own computing equipment in ways that allegedly infringe the '039 and '286 Patents. Core Scientific made this clear in the Declaration of Cline Kezar attached to its motion to transfer:

> Core Scientific **provides and operates dedicated "data centers" for third-party customers** that focus on HPC activities such as cloud computing, machine learning, and artificial intelligence. Core Scientific refers to this as "colocation," whereby **Core Scientific licenses data center space and related services such as security to its customers**. The customers pay fixed payments (based on electric capacity) and variable payments on a recurring basis. HPC colocation licenses may include all or portions of a data center, where customers may also lease office space to support their colocation operations and **revenue is primarily based on power usage as well as square footage**.

Dkt. 23-1 ¶ 4 (emphases added); *see also* Dkt. 23-10 at 11 ("Our high-density colocation services provide space, power, cooling, facilities operations, security and other services to third-party HPC customers to support workloads for machine learning and artificial intelligence.").

Therefore, Plaintiffs' attempt to claim direct infringement of the '039 Patent (and the '286 Patent) through Defendant's alleged "making, using, testing, selling, offering for sale, and/or importing hardware and/or software including devices and software . . . for hosting HPC and AI compute workloads (including, for example, GPUs, CPUs, DPUs, and/or other computers or processing devices)" rings hollow. Dkt. 51-3 ¶ 168; *see also Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774–75 (Fed. Cir. 1993) ("[A] method claim is not directly infringed by the sale of an apparatus even though it is capable of performing only the patented method. The sale of the apparatus is not a sale of the method. ***A method claim is directly infringed only by <u>one practicing the patented method</u>***." (emphasis added)); *Ricoh Co. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008) ("[A] party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a)."). Here,

7

Plaintiffs have not colorably alleged that Core Scientific, by merely providing the real estate and power for the computers that Plaintiffs allege infringe, has committed any act of direct infringement.

Similarly, Plaintiffs' allegation that Core Scientific has allegedly "induced and/or contributed" to infringement of the '039 and '286 Patents (Dkt. 51-3 ¶¶ 60, 162–63, 169–71) is not credible. Again, Core Scientific's role is only to provide real estate, power, and security for its HPC customers. It has no control whatsoever over what those customers do with the computers they install and operate in Core Scientific's data centers. Plaintiffs' indirect infringement allegation is akin to a patent infringement plaintiff accusing the real estate company that leases, e.g., Samsung's office space in this District of inducing Samsung's accused infringing activities. There is no support in the law for such an unreasonable accusation.

Thus, because the proposed amendment adding the allegations of infringement against Core Scientific's HPC business is subject to dismissal, the Court should deny Plaintiffs' motion for leave.

> **B.      There is no good cause for the proposed amendment under Rule 16.**
>
> **1.      This amendment, especially with no change in schedule, would greatly prejudice Core Scientific.**

Plaintiffs are not merely trying to add more of the same technology to this case. Instead, Plaintiffs are accusing entirely different products with a different set of direct infringers. "While, in general, the Court may not find undue prejudice in adding a patent at this stage, the fact that the new patent covers infrastructure as well as devices expands the scope of the litigation beyond what was originally contemplated in this case." *Koninklijke*, No. 2:14-CV-1165-JRG, Dkt. 58 at 3. The so-called importance of the amendment cannot give Plaintiffs a carte blanche opportunity

8

to force Defendant to litigate against a new patent and a new accused product on an expedited schedule.

Here, Plaintiffs' proposed new claim charts now accuse "HPC devices" from CoreWeave that have "NVIDIA DPUs and GPUs" that were not at issue in the original complaint. Dkt. 52-11 at 18; Dkt. 52-12 at 12. At a minimum, then, the parties will require discovery from those companies and/or Core Scientific will need to interplead against both NVIDIA and CoreWeave, who, according to Plaintiffs, "uses NVIDIA DPUs to increase the performance of its GPU compute operations" (Dkt. 51-3 ¶ 56), if this amendment is permitted. This would greatly expand the scope of the case by requiring, at the very least, third-party subpoenas for documents and depositions. But more likely, this amendment will lead to these third parties being indispensable or necessary to the resolution of this case and therefore required to be joined.

Similarly, Plaintiffs also seek via this amendment to assert the new '039 Patent against the previously accused bitcoin mining operations. But the allegations are directed at the algorithms running in mining machines (called "Antminers") provided to Core Scientific by the company Bitmain Technologies Limited ("Bitmain"). *See* Dkt. 52-12 at 7–8, 23 ("Antminer S19 Pro firmware code includes a function . . . which categorizes and unrolls iterations of an original secure hash algorithm into even iterations and odd iterations by executing ARM instructions."). This amendment will also expand the case by requiring extensive third-party discovery from Bitmain and/or the addition of Bitmain as an indispensable or necessary party.

Allowing the amendment will therefore significantly expand the complexity of the case while essentially putting the case back at ground zero but on a much more compressed schedule. The amendment will require new pleading motion practice, potentially the addition of up to three new parties, additions to the claim construction process by bringing in a new patent, new

9

contentions, and expansions of the discovery required. Doing all this within the time frame left in the current Docket Control Order is fundamentally unfair to Core Scientific.

### 2. Plaintiffs provide no reason for their delay.

Plaintiffs' sole explanation for their failure to assert the '039 Patent or accuse Core Scientific's HPC business in the original complaint is allegedly that recent events made these new allegations plausible. *See* Dkt. 51 at 9 (claiming Plaintiffs moved for leave "promptly after obtaining plausible basis to make these allegations"). But Plaintiffs do not explain what recent events gave them this supposed plausibility. That is because no "recent" events did so. Core Scientific's HPC business has not been the subject of discovery in this case and all the information that Plaintiffs use in their proposed amendment about this business was already publicly available before the filing of this lawsuit. Indeed, Plaintiffs cite publicly available Core Scientific filings from 2024 and early 2025 throughout their new infringement charts. *See, e.g.*, Dkt. 52-12. There is no new development or new product introduction that gave Plaintiffs a reason to add a new arm of Core Scientific's business now, after the completion of venue discovery, motion to dismiss briefing, and motion to transfer briefing.

Similarly, the '039 Patent issued on April 29, 2014—approximately ***eleven years*** before this lawsuit was filed. Plaintiffs did not recently add this patent to their portfolio, like the situation that the Court found favored leave in *Apex*. 2024 WL 1744063, at *2. In fact, Plaintiffs have been the assignee of the '039 Patent since May 11, 2023. *See* Exhibit A (USPTO Website). And Plaintiffs seek not only to assert this patent against the newly accused HPC business but also against the already accused bitcoin mining operations. Dkt. 51 at 2. There is simply no reason that Plaintiffs could not have included the '039 Patent in the original complaint. Therefore, Plaintiffs failed to meet their burden. *See Sybase, Inc. v. Vertica Sys., Inc.*, No. 6:08 CV 24, 2009 WL 4574690, at *2–3 (E.D. Tex. Nov. 30, 2009) (denying plaintiff's motion to

amend its complaint and infringement contentions where it failed to "show that its delay in adding the [new] [p]atent was reasonable").

### 3. A continuance would be necessary to maintain a case of the scope desired in the amendment.

As often recognized by this Court, a continuance would help to ease the burdens that Plaintiffs' proposed amendment places on Core Scientific. The Court in *Apex* understood the constriction that adding patents and products has on a case, ordering the parties to "meet and confer and jointly file a proposed Amended Docket Control Order" that "accommodate[s] the inclusion of the Additional Patents in this case without altering the February 10, 2025 trial date." *Apex*, 2024 WL 1744063, at *4. The parties did so, choosing to postpone claim construction, dispositive motions, and motions to strike expert testimony to make sure that "there is sufficient time for the parties to develop their infringement/invalidity theories and conduct fact discovery as to the additional patents." *See Apex Beam Techs. LLC v. TCT Mobile Int'l Ltd.*, No. 2:21-CV-438-JRG, Dkt. 56 at 1–2 (E.D. Tex. Apr. 30, 2024). Here, the situation requires more, including moving the proposed trial date by three to four months, to address the prejudice to Core Scientific where the added patent and newly accused HPC business are not even related to the original claims.

### C. Plaintiffs lack good cause to amend their infringement contentions for the '286 Patent.

"Plaintiffs are expected to rigorously analyze all publicly available information before bringing suit and must explain with great detail their theories of infringement." *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-693-JRG-RSP, 2017 WL 3007464, at *1 (E.D. Tex. July 14, 2017) (internal citations omitted). Plaintiffs' evident failure to properly analyze public information alone warrants denial of Plaintiffs' request to amend their infringement contentions to assert the '286 Patent against the HPC business. *See, e.g.*, *Glob. Sessions LP v.*

11

*Travelocity.com LP*, No. 6:10-CV-671 LED-JDL, 2012 WL 1903903, at *5 (E.D. Tex. May 25, 2012) (denying plaintiff's motion to amend its infringement contentions to accuse new products where "[plaintiff] could have easily captured screenshots of the [new products] and appropriately charted them to comply with P.R. 3-1"); *Sol IP, LLC v. AT&T Mobility LLC,* No. 2:18-CV-527-RWS-RSP, 2020 WL 1911388, at *5 (E.D. Tex. Apr. 20, 2020) (granting motion to strike infringement contentions as to belatedly added accused products where "the vast majority of the newly accused mobile devices could have been identified using publicly available websites").[4]

## V.     CONCLUSION

For all the reasons stated herein, Core Scientific respectfully requests that the Court deny Plaintiffs' motion for leave to amend their original complaint and infringement contentions. In the alternative, if Plaintiffs' motion is granted, Core Scientific requests that the Court continue the schedule to lessen the prejudice that will result to Core Scientific.

---

[4]    If the Court determines to allow the amended pleading and adjusts the Docket Control Order, Core Scientific does not object to new dates being set for serving updated infringement and invalidity contentions.

| | |
|---|---|
| Dated: December 3, 2025 | Respectfully submitted, |
| | /s/ *Brian E. Ferguson* |
| | Brian E. Ferguson<br>WINSTON & STRAWN LLP<br>1901 L Street, N.W.<br>Washington, D.C. 20036<br>Telephone: (202) 282-5276<br>Email: beferguson@winston.com |
| | Rex A. Mann<br>WINSTON & STRAWN LLP<br>2121 North Pearl Street, Suite 900<br>Dallas, TX 75201<br>Tel.: (214) 453-6500<br>Email: rmann@winston.com |
| | Olivia A. Wogon<br>WINSTON & STRAWN LLP<br>800 Capitol St., Suite 2400<br>Houston, TX 77002<br>Tel.: (713) 651-2600<br>Email: owogon@winston.com |
| | Yuchen Han<br>WINSTON & STRAWN LLP<br>333 S. Grand Avenue<br>Los Angeles, CA 90071<br>Tel.: (213) 615-1700<br>Email: yhan@winston.com |
| | **Attorneys for Core Scientific, Inc.** |

## CERTIFICATE OF SERVICE

      I certify that a true and correct copy of the foregoing document has been served on counsel of record, who are deemed to have consented to electronic service, on December 3, 2025, via electronic filing using the Court's CM/ECF system.

                                                */s/ Brian E. Ferguson*
                                                Brian E. Ferguson