IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

|  |  |
|---|---|
| Malikie Innovations Ltd. and Key Patent Innovations Ltd.,<br><br>        **Plaintiffs,**<br><br>    vs.<br><br>Core Scientific, Inc.<br><br>        **Defendants.** | **Case No. 2:25-CV-519-JRG-RSP**<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS PREDATING DEFENDANTS' EMERGENCE FROM BANKRUPTCY

**INTRODUCTION**

Defendant Core Scientific, Inc. ("Core Scientific" or "Defendant") respectfully submits this Opposition to plaintiffs Malikie Innovations Ltd.'s ("Malikie") and Key Patent Innovations Ltd.'s ("KPI") (together, "Plaintiffs") Motion to Compel Production of Documents Predating Defendant's Emergence from Bankruptcy (Dkt. 64) (the "Motion"). Plaintiffs' Motion fundamentally mischaracterizes the effect of Core Scientific's Chapter 11 bankruptcy discharge and asks this Court to adopt a legal theory unsupported by the Bankruptcy Code and Federal Circuit precedent.

Plaintiffs ask this Court to require Core Scientific to search for and produce documents from before its January 23, 2024, emergence from bankruptcy, arguing that such documents are relevant to a "hypothetical negotiation" that, in Plaintiffs' view, would have occurred in 2017. This position ignores a fundamental principle of bankruptcy law: confirmation of a Chapter 11 plan discharges the debtor from liability for pre-confirmation conduct, effectively creating a new legal entity for purposes of prospective liability. The hypothetical negotiation for purposes of assessing damages in this case therefore must be set at the date Core Scientific emerged from bankruptcy—the date the alleged post-bankruptcy infringement began—not years earlier when any alleged infringement was legally extinguished through bankruptcy proceedings.

Plaintiffs' request violates the release and injunctive provisions from the bankruptcy proceeding by raising this issue in the Eastern District rather than the Bankruptcy Court where Plaintiffs first must petition in order to bring claims concerning pre-confirmation conduct.

**FACTUAL BACKGROUND**

Plaintiffs do not dispute that Core Scientific filed for Chapter 11 bankruptcy on December 21, 2022, and emerged from bankruptcy on January 23, 2024, following court approval of its Fourth Amended Joint Chapter 11 Plan (the "Plan"). Section 1141(d) of Chapter

1

11 of the United States Code provides that the confirmation of a plan "discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d). On January 16, 2024, the Bankruptcy Court for the Southern District of Texas entered its Findings of Fact, Conclusions of Law, and Order confirming the Plan (the "Confirmation Order"), noting explicitly—consistent with well-established bankruptcy law—that:

> Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in a contract, instrument, or other agreement or document executed pursuant to the Plan, ***the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their Assets or properties*** . . . . The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

*In re Core Sci., Inc.*, Case No. 22-90341, Dkt. 1749 at Exhibit A, p. 89 (Bankr. S.D. Tex. Jan. 16, 2024) (Exhibit 1 hereto) (emphasis added).

Plaintiffs acknowledge this limitation by expressly seeking only "damages for infringing activity not discharged by or as a result of Core's bankruptcy proceedings" in their Complaint. Dkt. 1, ¶ 107. But now, Plaintiffs seek to compel production of documents predating Core Scientific's bankruptcy emergence, arguing such documents are relevant to a hypothetical negotiation that allegedly would have occurred in approximately 2017.

## ARGUMENT

### A. Bankruptcy Law Extinguishes Pre-Confirmation Liability, so the Present Cause of Action Arises Post-Confirmation

Plaintiffs misunderstand the legal effect of a bankruptcy discharge. As the Federal Circuit has held, a "discharge in bankruptcy operates as an injunction against a plaintiff asserting a claim for a debt incurred, or a cause of action that arose, before the date of bankruptcy discharge."

*Hazelquist v. Guchi Moochie Tackle Co., Inc.*, 437 F.3d 1178, 1181 (Fed. Cir. 2006). Post-discharge patent infringement "constitutes an entirely new cause of action: 'each act of patent infringement gives rise to a separate cause of action,' and any infringing activity occurring after discharge 'gives rise to a cause of action that dates from the moment of infringement, after the discharge.'" *Id*.

The Federal Circuit's holding in *Hazelquist* is dispositive. The court made clear that post-bankruptcy infringement is a legally distinct cause of action arising at the time of the post-discharge conduct, not a continuation of pre-bankruptcy infringement. Thus, any hypothetical negotiation underlying a damages claim for post-bankruptcy infringement must be assessed at the time the alleged infringement began—which is after the date of bankruptcy discharge. *See Applied Med. Res. Corp. v. United States Surgical Corp.*, 435 F.3d 1356, 1361 (Fed. Cir. 2006) ("We are required to identify the infringement requiring compensation, and evaluate damages based on a hypothetical negotiation at the time that infringement began, not an earlier one.").

Plaintiffs' reliance on *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012), and *Wang Lab., Inc. v. Toshiba Corp.*, 993 F.2d 858 (Fed. Cir. 1993), is misplaced. Those cases merely recognize that a hypothetical negotiation date may predate a damages period where infringement occurred earlier but damages were statutorily limited by provisions such as the six-year limitation in 35 U.S.C. § 286 or the notice requirements of 35 U.S.C. § 287. In each of those cases, the earlier infringement remained legally cognizable; only the recoverable damages were limited.

Here, in contrast, any infringement predating the bankruptcy discharge has been legally extinguished—not merely limited in recoverable damages. The distinction is important. Section 1141(d)(1)(A) of the Bankruptcy Code provides that "the confirmation of a plan . . . discharges

3

the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1)(A). Thus, allowing the hypothetical negotiation to relate back to discharged pre-bankruptcy conduct would improperly reintroduce legal consequences for claims that bankruptcy law has eliminated entirely.

### B.  Pre-Bankruptcy Documents Are Not Relevant to Any Issue in This Case

Because the hypothetical negotiation date is properly set at Core Scientific's emergence from bankruptcy on January 23, 2024, documents predating that emergence are not relevant to any issue in this case, including: (i) damages and the *Georgia-Pacific* Factors; (ii) non-infringing alternatives; and (iii) infringement.

The *Georgia-Pacific* factors are assessed as of the date of the hypothetical negotiation and the Federal Circuit has made clear that the stated aim is to "ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *see also Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1157 (6th Cir.1978) ("Among the relevant facts are: what plaintiff's property was, to what extent defendant has taken it, its usefulness and commercial value as shown by its advantages over other things and by the extent of its use, and the commercial situation." (citations and quotation marks omitted)). Because the hypothetical negotiation date is January 23, 2024—when Core Scientific emerged from bankruptcy and the alleged post-bankruptcy infringement began—information relevant to the *Georgia-Pacific* analysis must be assessed from that date, not from 2017.

Similarly, evidence regarding the availability of non-infringing alternatives is relevant as of the hypothetical negotiation date, as "the core economic question is what the infringer in the hypothetical negotiation would have anticipated the profit-making potential of use of the patented technology to be, compared to non-infringing alternatives. *VLSI Tech. LLC v. Intel*

4

*Corp.*, 87 F.4th 1332, 1345-46 (Fed. Cir. 2023) (citations and quotations omitted). Again, this inquiry should be conducted from the perspective of January 23, 2024, not 2017. *See Carnegie Mellon Univ. v. Marvell Technology Group, Ltd.*, 807 F.3d 1283, 1304 (Fed. Cir. 2015) ("A key inquiry in the analysis is what it would have been worth to the defendant, as it saw things at the time, to obtain the authority to use the patented technology, considering the benefits it would expect to receive from using the technology and the alternatives it might have pursued.").

Plaintiffs argue pre-bankruptcy documents are relevant to "the date of first infringement for purposes of the hypothetical negotiation" and "whether the infringement was continuous." Motion at 6. However, under *Hazelquist*, the date of first legally cognizable infringement is the date of Core Scientific's emergence from bankruptcy. Any pre-bankruptcy infringing activity cannot form the basis of a claim because it has been discharged. Therefore, whether infringement was "continuous" before and after bankruptcy is legally irrelevant. Further, Plaintiffs' proposition that the date of first infringement is 2017 betrays the aims of the hypothetical negotiation for the allegedly infringing conduct, which only allegedly commenced post-bankruptcy.

### C. Plaintiffs' Reliance on *In re Edgeworth* is Misplaced

Plaintiffs cite *In re Edgeworth*, 993 F.2d 51, 53 (5th Cir. 1993), for the proposition that a discharge "merely releases the debtor from personal liability for the debt" but does not "extinguish the debt itself." This misses the point entirely.

While *Edgeworth* accurately describes one aspect of discharge—that a debt may technically survive against non-debtor parties or collateral—it does not support Plaintiffs' theory. In the patent context, *Hazelquist* makes clear that the relevant inquiry is whether a cause of action exists. 437 F.3d at 1180. Post-discharge infringement "gives rise to a cause of action that

5

dates from the moment of infringement, after the discharge." *Id*. at 1181. The only cause of action Plaintiffs can assert is one that arose after January 23, 2024.

Moreover, the entire point of the Chapter 11 reorganization process is to provide the reorganized debtor with a "fresh start" unburdened by pre-confirmation liabilities. The Confirmation Order in Core Scientific's bankruptcy expressly provides that all Claims, Interests, and Causes of Action "of any nature whatsoever" arising before the Effective Date are discharged. *In re Core Sci., Inc.*, Case No. 22-90341 Dkt. 1749 at 89 (Exhibit 1). Requiring Defendant to produce pre-bankruptcy documents would effectively allow Plaintiffs to litigate issues that bankruptcy law has specifically discharged.

### D.  Any Inquiry Into Pre-Confirmation Conduct Must Be Before the Bankruptcy Court

The present issue has been squarely addressed by the U.S. Bankruptcy Court for the Northern District of Texas. In *In re Superior Air Parts, Inc.*, after a Chapter 11 case, a state court action was removed to the bankruptcy court after which licensor filed an amended complaint asserting claims for misappropriation of trade secrets, breach of fiduciary duty, breach of contract, and conversion that were ultimately removed to the bankruptcy court. 486 B.R. 728 (Bankr. N.D. Tex. Nov. 28, 2012). There, concerning claims that arose both prior to confirmation and post-confirmation, the Court held:

> Superior remained bound by the 1999 Agreements, and was obligated to comply with the license post-petition and post-confirmation. Confirmation of the Plan only discharged Superior from any debt "that arose before the date of such confirmation," whether or not the Plaintiffs filed a proof of claim in Superior's bankruptcy case. 11 U.S.C. § 1141(d)(1). Therefore, since Superior remained bound by the 1999 Agreements, any conduct by it post-confirmation that gave rise to a post-confirmation claim in tort or for breach of contract was not discharged by confirmation of the Plan. Conversely, ***any of the Plaintiffs' claims against Superior that arose prior to confirmation of the Plan were discharged***.[9] . . .
>
> [9] The ***Plaintiffs appear to be trying to get around this result by only seeking damages from the date of confirmation to the present***. However, if the claim upon which the Plaintiffs seek recovery arose pre-confirmation, ***the fact that they***

6

*agree to limit their damages does not affect whether or not the claim was discharged*.

*In re Superior Air Parts*, 486 B.R. at 738 and n. 9 (emphasis added).

Here, as in *Superior Air Parts*, Plaintiffs are attempting to treat pre- and post-confirmation claims as one "by only seeking damages from the date of confirmation to the present." *Id*. However, this approach is contrary to the effects of the discharge of the pre-confirmation conduct. As in *Superior Air Products*, the claims against Core Scientific's post-confirmation conduct must be treated as a distinct cause of action leading to a hypothetical negotiation date of January 23, 2024.

Further, any inquiry into pre-confirmation conduct signals an effort to pursue causes of action that arose in whole or part prior to the effective date. Paragraph gg of the Confirmation Order makes clear that any such claims or causes of action must be raised with the Bankruptcy Court for a determination of whether they may be brought. Malikie has made no such request. *In re Core Sci.*, Dkt. 1749 at 17 (Exhibit 1). If Plaintiffs insist on pressing their claim for discovery into discharged conduct, Core Scientific will have no choice but to seek a mandatory stay of the present case. Moreover, Plaintiffs continued pursuit of this motion may lead to a finding of civil contempt against Plaintiffs. *See In re Crocker*, 941 F.3d 206, 215 (5th Cir. 2019) ("Civil contempt is the normal sanction for violations of the discharge injunction").

### E. Production of Pre-Bankruptcy Documents Would Be Unduly Burdensome and Disproportionate

Even if pre-bankruptcy documents had some marginal relevance—which they do not—production would be unduly burdensome and disproportionate to the needs of the case. Defendant has produced and will continue to produce post-bankruptcy documents responsive to the Discovery Order.

7

As Defendant explained in prior correspondence between the parties, it is, at best for Plaintiffs, a customer of the entities committing the allegedly infringing activities. It does not have development documents relating to the accused technology because it does not develop the accused technology. To the extent Plaintiffs seek technical documents related to the accused technology, it will need to be obtained through subpoenas to the relevant suppliers such as Coinbase, Foundry, CoreWeave, and Bitmain Technologies.

Moreover, Core Scientific has already produced agreements with relevant third parties and has agreed to conduct targeted email searches directed at specific communications referenced in correspondence. This approach is proportionate to the needs of the case and consistent with the Discovery Order. Requiring Core Scientific to search for and produce documents from a period from before it was in bankruptcy—and for which no liability can attach—would impose substantial costs and burdens with no corresponding benefit to the litigation.

## CONCLUSION

For the reasons stated above, Defendant respectfully requests that the Court deny Plaintiffs' Motion to Compel. The law is clear: confirmation of Core Scientific's Chapter 11 Plan extinguished liability for any pre-confirmation infringement. The hypothetical negotiation date for purposes of any damages analysis must therefore be set at January 23, 2024, the date Core Scientific emerged from bankruptcy. Pre-bankruptcy documents are irrelevant to any issue in this case, and their production would be unduly burdensome and disproportionate to the needs of the case. A proposed Order is attached.

Dated: March 3, 2026

Respectfully submitted,

/s/ *Brian E. Ferguson*
Brian E. Ferguson

**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Tel: (202) 737-0500
Email: bferguson@kslaw.com

Rex A. Mann
Texas Bar No. 24075509
**KING & SPALDING LLP**
2601 Olive Street
Suite 2300
Dallas, TX 75201
Tel.: (214) 764-4600
Email: rmann@kslaw.com

***Attorneys for Core Scientific, Inc.***

9

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served on counsel of record, who are deemed to have consented to electronic service, on March 3, 2026, via electronic filing using the Court's CM/ECF system.

*/s/ Brian E. Ferguson*

Brian E. Ferguson

10