**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| MALIKIE INNOVATIONS LTD. *and* <br> KEY PATENT INNOVATIONS LTD., <br><br> *Plaintiffs*, <br><br> v. <br><br> CORE SCIENTIFIC, INC., <br> *Defendant*. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CASE NO. 2:25-CV-00519-JRG-RSP |

**<u>MEMORANDUM ORDER</u>**

Before the Court is Defendant Core Scientific's Motion to Transfer Venue Under 28 U.S.C. § 1404(a). **Dkt. No. 23**. The motion is fully briefed, Dkt. Nos. 45, 47, 48, and the Parties submitted a notice of additional facts and a response, Dkt. Nos. 59, 60. In the Motion, Core seeks transfer to Western District of Texas ("WDTX") because "no party has relevant ties to this District and [WDTX] is clearly more convenient." Dkt. No. 23 at 1. For the reasons set forth below, the Court denies the Motion.

## I. LEGAL STANDARD

A federal district court may transfer a case "for the convenience of parties and witnesses" to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The threshold inquiry is whether the case could have been brought in the proposed transferee forum. *In re Volkswagen AG*, 371 F.3d 201, 202-03 (5th Cir. 2004) ("*Volkswagen I*"). Whether a suit "might have been brought" in the transferee forum encompasses subject matter jurisdiction, personal jurisdiction, and propriety of venue. *Id.* at 203. Only if these requirements are met should the Court decide whether convenience warrants transfer. *See id.*; *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). The burden to prove that a case could have

been brought in the transferee forum falls on the party seeking transfer. *See Volkswagen II*, 545 F.3d at 315; *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963).

As to propriety of the transferee forum, the Judicial Code provides that 28 U.S.C. § 1400(b) is the "sole and exclusive provision controlling venue in patent infringement actions" and is not supplemented by the general venue statutes. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 266 (2017) (citing *Fourco Glass Co. v. Transmirra Prod. Corp.*, 353 U.S. 222, 229 (1957)). Pursuant to 28 U.S.C. § 1400(b), venue lies "in the judicial district where the defendant resides" or "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Three elements must be met in order to establish that a defendant has a regular and established place of business in the district: (1) there must be a physical place; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant. *In re: Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

Once the moving party has established that the instant case could have been brought in the transferee forum, the Court moves on to consider the private and public factors. The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I,* 371 F.3d at 203). The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (quoting *Volkswagen I*, 371 F.3d at 203) (alterations in original). The factors are neither exclusive nor exhaustive, and no one factor is dispositive. *Id.*

In reversing a district court's grant of a transfer motion, the Fifth Circuit recently emphasized that "it is the movant's burden—and the movant's alone—to adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (citing *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022)). "[S]howing "good cause" requires the movant to "clearly demonstrate" that its chosen venue is "clearly more convenient." *Id.* That standard is not met if the movant merely shows that the transferee venue is more likely than not to be more convenient. *Id.* Likewise, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer. *Id.* "[T]o establish good cause, a movant must show (1) that the marginal gain in convenience will be significant, and (2) that its evidence makes it plainly obvious—*i.e.*, clearly demonstrated—that those marginal gains will actually materialize in the transferee venue." *Id.*

In considering a transfer under § 1404(a), the Court may consider undisputed facts outside of the pleadings but must draw all reasonable inferences and resolve factual disputes in favor of the non-movant. *See Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-CV-123, 2019 WL 6345191, at *2 (E.D. Tex. Nov. 27, 2019); *cf. Trois v. Apple Tree Auction Cent. Inc.*, 882 F.3d 485, 492-93 (5th Cir. 2018) (reviewing a transfer under § 1406); *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (reviewing enforcement of a forum-selection clause).

In balancing the public and private interest factors, the Fifth Circuit directs courts to avoid a mere tallying of the factors. *See In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013) ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology."). To that end, a court considers not only each factor's outcome but also its weight to determine whether the actual convenience of the proposed transferee forum is "clearly more convenient" than

that of its own district. *In re Chamber of Commerce of United States of Am.*, 105 F.4th 297, 310 (5th Cir. 2024) (quoting *In re Clarke*, 94 F.4th at 508).

*In re Clarke* shows that a motion to transfer under 1404(a) carries a substantial burden. *See* 94 F.4th 502. Here, Core has failed to meet that burden, as explained below.

## II.    DISCUSSION

### A.    Propriety of WDTX

Core argues that the case could have originally been brought in WDTX. Dkt. No. 23. Core argues that venue is proper in WDTX because it has data centers there, which qualify as places of business, and, to the extent any infringement is found, infringement occurred in its Pecos data center there. *Id.* at 7–8. Core continues that WDTX has subject matter jurisdiction under 28 U.S.C. § 1338(a). *Id.* at 7. Core also argues WDTX has personal jurisdiction over it because of its Austin and Pecos data centers, and, even if WDTX did not, it consents to personal jurisdiction there. *Id.* Malikie does not dispute these arguments, *see* Dkt. No. 45, and the Court agrees with Core. Accordingly, the Court finds that the case could have originally been brought in WDTX.

### B.    Private Interest Factors

#### i.    Relative Ease of Access to Sources of Proof

Core argues that its "relevant technical, marketing, financial, and business strategy documents" are "on the 'company's share drive,' which is accessible at [its] Austin campus." Dkt. No. 23 at 10 (citing Kezar Decl., Dkt. No. 23-1 ¶ 23). Core also argues that the accused instrumentality, the mining machines themselves, as well as the source code pertaining to them, are located in WDTX and will be available for inspection there. *Id.* at 11–12 (citing Kezar Decl., Dkt. No. 23-1 ¶¶ 13, 24–25).

Malikie argues that Mr. Kezar admitted Core's "'share drive' and source code are stored in a cloud-based network that is physically hosted by Amazon Web Services in Ohio and is equally

accessible from" this District "via the Internet." Dkt. No. 45 at 9 (citing Kezar Dep. Tr., Dkt. No. 45-3 at 259:1–261:18, 263:10–265:1). Malikie also argues that the mining machines themselves matter only insofar as their functionality, which is controlled "by the firmware and software running on them," and that firmware or software is likewise equally accessible in this District. *Id.* at 10 (first citing Kezar Dep. Tr., Dkt. No. 45-3 at 351:13–354:2 (software in cloud storage); then citing Kom Dep. Tr., 45-12 at 72:11-14, 78:15–80:4, 82:1–83:4 (Bitmain makes machines, and all documentation for them is publicly available on their website); then citing Dkt. No. 45-13 at 8 (documents showing how Core share drive is organized "is produced at CS-0005159–CS-0005188"); and then citing Dkt. No. 45-14 (CS-0005159) (firmware shown)).

The Court agrees with Malikie's arguments. Core mostly relies on electronic evidence stored on cloud servers, which its own witness identified as being equally accessible in this District. *See In re Planned Parenthood*, 52 F.4th 625, 630 (5th Cir. 2022) ("The location of evidence bears much more strongly on the transfer analysis when, as in *Volkswagen*, the evidence is physical in nature." (citation omitted)). The only physical evidence Core relies on is accused mining machines. However, Malikie has pointed to sufficient evidence to show that any purported benefit to being able to inspect the machines in WDTX is minimal, considering their infringement read depends on functionality that is controlled by software and firmware, which is again equally accessible from cloud servers (where it is stored) and websites in this District. Accordingly, the Court finds that this factor weighs only slightly in favor of transfer.

### ii. *Availability of Compulsory Process to Secure Attendance of Witnesses*

Core argues this factor is neutral because it "is not . . . aware of any non-party witnesses impacted by" Federal Rule of Civil Procedure 45, as the "inventors are based in Canada, and [it] has not identified any third party . . . within the subpoena power of either forum." Dkt. No. 23 at 12. Core later argues that there are "seven employees that will testify at trial, all of whom are senior

level" with roles directly related to the accused technology, six of whom are in WDTX, and none of whom are in this District. Dkt. No. 47 at 3–4. Core also argues that its will-call witnesses have more relevant and material information than the former employees Malikie identifies. *Id.*

Malikie argues that this factor weighs against transfer because "over a dozen Core . . . employees who worked at [its] Denton Data Center and reside in Denton County . . . have relevant knowledge" and "at least nine of those . . . are former employees" and thus unwilling. Dkt. No. 45 at 11 (citing Dkt. No. 45-5). Malikie also identifies a knowledgeable third party individual at BlackBerry (a predecessor in interest to the asserted patents) in its Plano office, and PPS (Malikie's licensing advisor), which is in Frisco. *Id.* at 11–12 (citing Eklem Decl., Dkt. No. 45-1 ¶¶ 2–6). Malikie argues that, while these individuals, whether in Denton, Plano, Keller, Irving, or Frisco, are within the subpoena power of both districts, travel to Marshall would be more convenient. *Id.*

Beginning with Core's identified employees, they are not considered under this factor but under the next one because they are presumed willing. *In re Planned Parenthood*, 52 F.4th at 630–31; *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.3 (Fed. Cir. Sept. 25, 2018). On the other side, Malikie has identified several specific former employees of Core and third parties with relevant and material information, who, while within the subpoena power of both Courts, would travel significantly less distance to get to Marshall as compared to Austin. As to Core's final argument, the Court finds that it carries little weight, especially in view of the fact that the witnesses Core identifies are not considered under this factor and the witnesses Malikie identifies have knowledge about patent ownership and licensing, and the allegedly infringing activity (bitcoin mining) that took place in this District. *In re SAP Am., Inc.*, 133 F.4th 1370, 1375 (Fed. Cir. 2025); *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) ("Requiring a defendant to show that the potential witness has more relevant and material information at this point in the

6

litigation or risk facing denial of transfer on that basis is unnecessary."). Therefore, the Court finds that this factor weighs against transfer.

### iii. Cost of Attendance for Willing Witnesses

Core argues that this factor strongly favors transfer because it would be less costly for its employee witnesses to attend a trial in Austin as compared to Marshall, though it accepts that the Court weighs the costs to employee witnesses less in analyzing this factor under *Kranos IP Corp. v. Riddell Inc.*, No. 2:17-CV-443, 2017 WL 3704762, at *12 (E.D. Tex. Aug. 28, 2017). Dkt. No. 23 at 12–13. Core specifically points to its five will-call employee witnesses living in Austin. *Id.* (citing Kezar Decl., Dkt. No. 23-1 ¶¶ 14–21). Core also argues that its two will-call employees outside of Austin, in Pecos, Texas, and in Wilmington, North Carolina, would prefer Austin as well because they could access Core's Austin campus during trial. *Id.* at 14 (citing Kezar Decl., Dkt. No. 23-1 ¶ 22). Core argues that Malikie is "based in Ireland" and its witnesses "will need to travel a great distance no matter what." *Id.* Core argues that the PPS address in Plano is a mailing address, and the only witness who might attend is in Philadelphia, Pennsylvania, and will also have to travel a great distance whether trial is in Marshall or Austin. *Id.* (citing Ferguson Decl., Dkt. No. 23-2 ¶ 21). Core finally argues that any PPS or Malikie witnesses will also have to travel to Austin anyway, because Malikie has filed a parallel litigation there. *Id.*

While Malikie concedes that this factor "only slightly favors transfer," Malikie argues that cost for Core's employees is given less weight under *Kranos IP*. Dkt. No. 45 at 12. Malikie argues that travel from Marshall to Austin is "relatively inexpensive." Dkt. No. 48 at 4 (relying on *SK Nexilis Co. v. Solus Adv. Materials Co.*, No. 2:23-CV-539, 2025 WL 1384264, at *6 (E.D. Tex. May 13, 2025), and *Blemel Techs., LLC v. Nat'l Instruments Corp.*, No. 2:15-CV-134, 2016 WL 1228744, at *4 (E.D. Tex. Mar. 29, 2016)). Malikie argues that costs for Core's two employees outside of Austin cancel out because "they only need an Internet connection and could therefore"

work from Marshall, Dkt. No. 45 at 12–13 (citing Kezar Dep. Tr., Dkt. No. 45-3 at 260:20–261:5), and the application of the 100-mile rule for the employee in Pecos favors Austin, but for the employee in Wilmington favors Marshall, Dkt. No. 48 at 5 (citing Eklem Decl., Dkt. No. 45-1 ¶¶ 2–5) (relying on 100-mile rule as articulated in *Warner Recs., Inc. v. Altrice USA, Inc.*, No. 2:23-CV-576, 2024 WL 4201066, at *3 (E.D. Tex. Sept. 16, 2024)). As to Core's final argument about Malikie's parallel filing in WDTX, Malikie argues it is irrelevant to whether WDTX is "clearly more convenient" under this factor. Dkt. No. 45 at 13.

The Court affords some weight to Core's five employee witnesses who reside in Austin, but that weight is limited. *Kranos IP*, 2017 WL 3704762, at *11 (collecting cases). As to the two Core employees living outside of Austin, on balance, the Court agrees that they effectively cancel each other out upon application of the 100-mile rule. *Warner*, 2024 WL 4201066, at *3. The Court does not consider the convenience to the PPS individual Core identified here because there is no cited evidence indicating that he is willing, and the Court already considered him under the previous factor. *In re HP Inc.*, 2018 WL 42692486, at *3 n.1 ("When there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor."). As for any of Malikie's employee witnesses who may attend trial, travel from Ireland to Marshall is marginally less expensive under the 100-mile rule than travel to Austin. Additionally, the Court notes that Core has failed to identify any willing non-party witnesses for whom trial in Austin would be less expensive than trial in Marshall. Accordingly, the Court finds that this factor weighs only slightly in favor of transfer.

*iv.  All Other Practical Problems That Make Trial Easy, Expeditious, and Inexpensive*

Core argues that this factor weighs in favor of transfer because (1) it promptly filed this motion nine weeks after service, (2) there is already a parallel case in WDTX, and (3) the Court has not already expended significant resources in this case. Dkt. No. 23 at 14–15. Notably, in its

reply, Core drops all arguments except that the parallel case will proceed in WDTX because it has not challenged venue there. Dkt. No. 47 at 5 (relying on *Continental Grain Co. v. FBL-585*, 364 U.S. 19, 26 (1960), for the proposition that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that Sec. 1404(a) was designed to prevent.").

Malikie argues that, while a late motion weighs against transfer under *Cerence Operating Co. v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-482, 2025 WL 755219, at *6 (E.D. Tex. Mar. 10, 2025), an early motion does not inherently counsel in favor of transfer. Dkt. No. 45 at 14. Malikie also argues that, when two cases are filed on the same day (as this case and the parallel case were), there are no apparent judicial economy benefits from transferring. *Id.* (relying on *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013), *MAZ Encryption Techs., LLC v. Apricorn, Inc.*, No. 6:15-CV-979, 2016 WL 7626179, at *4 (E.D. Tex. Apr. 21, 2016), and *Wellogix Tech. Licensing LLC v. Automatic Data Processing, Inc.*, No. 6:11-CV-401, 2013 WL 1729606, at *7 (E.D. Tex. Mar. 19, 2013)); Dkt. No. 48 at 5 (citing *Ollnova Techs. Ltd. v. Ecobee Techs. ULC*, No. 2:22-CV-72, 2022 Wl 1558499 (E.D. Tex. May 17, 2022)). Malikie finally argues that "the Court has previously held that a case's 'infancy' is a neutral factor. Dkt. No. 45 at 15 (citing *Cardware Inc. v. Samsung Elecs. Co.*, No. 2:22-CV-141, 2023 WL 2871052, at *3 (E.D. Tex. Apr. 8, 2023)).

Although *Continental Grain* is persuasive, Core has not argued that the parallel case in WDTX does involve "precisely the same issues" within the meaning of the Supreme Court's use of that language. 364 U.S. at 20 ("A . . . barge sank . . . . A dispute arose over what caused the barge to sink. The barge owner . . . brought an action . . . in Tennessee . . . [against] the cargo owner . . . . The cargo owner later brought this action . . . in New Orleans against the barge and its owner."). Core's other arguments are unpersuasive. The Court thus treats this factor as neutral.

9

C. Public Interest Factors

      i.  *Administrative Difficulties Flowing from Court Congestion*

Core argues that this factor is neutral because this District's cases "proceed at approximately the same pace" as cases in WDTX. Dkt. No. 23 at 6 (citing Ferguson Decl., Dkt. No. 23-2 ¶ 21). Malikie argues that court congestion weighs against transfer because cases in this District proceed to trial more quickly than cases in WDTX, and this case is set for trial before the parallel case in WDTX. Dkt. No. 45 at 2 (citing Dkt. Nos. 23-16, -17); Dkt. No. 48 at 1 (relying on Dkt. Nos. 47-3, -8). Exhibits N and O show that the time to trial in this District is, on average, twenty-six months, versus twenty-nine months in WDTX. *See* Dkt. Nos. 23-16, -17. However, in view of *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023), the Court finds that this factor should be given neutral status. *See Emerging Auto. LLC v. Kia Corp.*, No. 2:23-CV-434, 2024 WL 3170398, at *13 (E.D. Tex. June 25, 2024).

      ii.  *Local Interests*

Core argues that this factor "firmly favors transfer" because "none of the allegedly infringing activity . . . *currently* takes place in this District." Dkt. No. 23 at 8–9 (citing Kezar Decl., Dkt. No. 23-1 ¶ 12). Core argues that it closed its Denton facility by the end of 2024, before this suit was filed, for "publicly documented reasons." *Id.* at 9 n.7 (citing Kezar Decl., Dkt. No. 23-1 ¶¶ 11–12). Instead, Core argues that WDTX has much greater localized interests because it has "the highest concentration of . . . employees knowledgeable" about the accused functionalities there and Core's "Pecos data center continues to perform bitcoin mining" there. *Id.* at 9–10 (citing Kezar Decl., Dkt. No. 23-1 ¶¶ 9, 13). Core argues that the Pecos facility has "mined 43% more bitcoin than the Denton" facility, and Denton's city council "applauded" Core's "exit from crypto mining in favor of high-performance computing." Dkt. No. 47 at 2–3 (relying on Dkt. No. 45-4, Dkt. No. 23-13 at 3, and Dkt. No. 47-6 at 3).

10

Malikie argues that this factor "weighs against transfer but is at most neutral" because Core had a "significant amount of bitcoin mining activities" in this District "that gave rise to this suit." Dkt. No. 45 at 2–3. Malikie argues that the Denton facility "was used from 2022 to December 2024" to mine bitcoin, "outpaced . . . its Pecos facility for most of 2024," and "in September of 2024, . . . had more bitcoin mining machines . . . than any of [Core's] other bitcoin mining facilities in the United States." *Id.* at 3–4 (relying on Dkt. No. 45-2 at 7–9, Kezar Dep. Tr., Dkt. No. 45-3 at 188:19–189:6, 187:20–188:3, 233:18–234:8, and Dkt. No. 45-4 at 3). Malikie argues that "at least 25 residents of cities within Denton County worked as employees or contractors of Core . . . in the relevant time frame," "at least 22 of" whom "had responsibilities that related to or supported bitcoin mining" and thus are "knowledgeable." *Id.* at 5–6 (citing Kezar Dep. Tr., Dkt. No. 45-3 at 49:1–88:9, 101:4–121:1). Malikie argues that the location of witnesses matters as an indicator of the "significant connection between EDTX and the events that gave rise to [the] suit." Dkt. No. 48 at 2 (citing *In re Clarke*, 94 F.4th at 511). Malikie also argues that the "City of Denton" partnered with Core to "deliver the power for [Core]'s bitcoin mining operations" and "was generating revenue from it," conferring in this District a "significant interest" in deciding whether financial benefits that flowed to Denton "were in violation of [Malikie's] patent rights."

The Court acknowledges that, while Core has since shuttered its Denton facility and moved any allegedly infringing machines away from this District, it cannot hide from the fact that a significant share of the alleged infringement giving rise to this suit occurred in Denton. *See In re Clarke*, 94 F.4th at 510 ("look not to the parties' significant connection to each forum . . . but rather the significant connections between a particular venue and the events that gave rise to a suit." (quotations omitted) (citations omitted)). On the flip side, however, a similar share of infringing

activity also occurred in the Pecos data center in WDTX and continues to occur there. Therefore, the Court finds this factor to be neutral.

### iii. Remaining Factors

The remaining public interest factors are (1) the familiarity of this District with the governing law of the case, and (2) the avoidance of unnecessary problems of conflict of laws. *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I,* 371 F.3d at 203). Core has conceded that both factors are neutral, which Malikie has acknowledged in lieu of arguing them. Dkt. No. 23 at 10; Dkt. No. 45 at 8–9. The Court thus accepts that these factors are neutral.

### III.   CONCLUSION

Having reviewed each factor, on balance, the Court finds that Core has not carried its burden to show that WDTX is clearly more convenient than this District. *In re Clarke*, 94 F.4th at 508; *In re Radmax, Ltd.*, 720 F.3d at 290 n.8. Accordingly, the Court finds that the Motion (Dkt. No. 23) should be and hereby is **DENIED**.

**SIGNED this 24th day of March, 2026.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE